HAMITER, Justice.
Alleging that the defendant charged them and collected rentals for an apartment in excess of the maximum permitted by regulations of the Office of Price Administration (hereinafter referred to as OPA), the three plaintiffs instituted this suit to recover the sum of $720, 'being triple the amount of the claimed excess during an eight months’ period. They prayed also for an award of attorney’s fees of $150.
Answering, defendant denied the asserted overcharge and affirmatively averred that her actions were lawful.
The district court, after trial, rendered judgment in favor of plaintiffs for $360.
In the Court of Appeal, on the original hearing, the judgment was reversed and set aside and the demands of plaintiffs were rejected at their costs. On a rehearing, however, that court (with a division among its members) amended the judgment of the district court, by reducing the overcharge award in favor of plaintiffs from $360 to $240 and by allowing $100 additional as attorney’s fees, and affirmed it as amended. See 39 So.2d 604.
On defendant’s application we issued the writ of certiorari, bringing the case here for review.
The living quarters in question, according to the record, are known as the lower left apartment of defendant’s premises located at Municipal No. 1022 Dalzell Street in Shreveport, and they consist of a bed room, a living room, a kitchen and a bath room. Prior to September 7, 1945, defendant had rented them for $75 per month to a Captain Nelson, but an OPA order of that date required a reduction of the monthly rental to $45.
About such date also there came to the attention of the defendant a pamphlet issued by OPA, Numbered D-301 and containing questions and answers designed to acquaint the public with rental regulations, Rule No. 76 of which recited:
“Q. I want to rent out individual rooms in my apartment as sleeping rooms only. Can I do this? A. Generally, if your apartment is vacant, you may rent out rooms for sleeping purposes only. However, you must register under the Hotel and Roominghouse Regulation and you are sub *399 ject to its provisions if you rent to more than two paying tenants.’ ”
With this rule in mind defendant addressed to the OPA Rent Director in Shreveport a letter o:f date October 26, 1945, reading: “This is to officially notify you of my intention to discontinue the renting of my apts. known as, Lower Right, Lower Left, and Upper Apt. 1022 Dalzell St. and to register them, or rather convert them into bedrooms, and reregister them as such under your rent control rules and regulations, Form D-301, rule 76, page 14. This to take effect immediately, and upon the vacancy of each apartment. Please furnish me with the necessary blanks, by mail, so that I may conform with your rules. I shall need nine blanks, and shall register each room as per your rental value set on my rooms No. 1, No. 2, and No. 3, in the same dwelling.”
The Rent Director, in a letter dated October 30, 1945, replied that the registration should be made in his office if possible and it had to be executed within thirty days from the date of the accommodations’ first rental.
About December 1, 1945, Captain Nelson moved from the lower left apartment, thus creating a vacancy there, and on December 8, 1945, the three plaintiffs took possession of the accommodations at a rental of $75 per month, to the payment of which they had agreed two days previously.
On January 4, 1946 (within thirty days from the date of the rental agreement), defendant went to the office of the Shreveport Rent Director and then and there, with the assistance of the latter’s employee, registered on printed forms the bed room and living room of the lower left apartment as two sleeping rooms (Numbered 104 and 105) that had been rented to the plaintiffs on December 6, 1945, at the rate of $30 per month each. The registration statements contained this further information: “Kitchen privileges $5 per month per person. Limited to four people using kitchen. This charge to be separate from room rent as bed room.”
From December 8, 1945, until December 1, 1946 (when they moved at defendant’s request), the three plaintiffs occupied the living quarters, and they paid the agreed monthly rental of $75 without any protest or complaint.. At no time during that period did the Shreveport Rent Director inspect such accommodations or order a rescission of or a change in the aforedescribed registration statements. Furthermore, it is undisputed that throughout the period of occupancy defendant furnished the linens and other coverings necessary for the two beds used by plaintiffs, one being the regular facility in the bed room -and the other a day bed in the living room.
In this action plaintiffs contend that defendant rented the quarters to them as an apartment (and they so testified), for which they were obligated to pay the registered ceiling price as such of only $45 per month. Defendant testified, on the other hand, that *401 the agreement provided for the three plaintiffs’ renting the accommodations as two sleeping rooms (at $30 each) with kitchen privileges for three persons (at $5 per person), all in accordance with the registration statements timely filed by her with the Shreveport Rent Director on January 4, 1946. Defendant’s further testimony, in this connection, was that initially she informed plaintiffs that she could equip the living room with a regular bed, a chest, and a vanity; but that they preferred it as a combination living room and bed room, the day bed to remain therein and for which she could provide the necessary linens and other coverings.
If defendant’s testimony be correct unquestionably plaintiffs’ demands are without merit, for the Rent Director himself stated under oath:
“Q. In other words, in this case, Mrs. Nasif could rent the lower left apartment for Forty-five ($45.00) Dollars as an apartment, and she could also, if she chose, or found tenants who wanted rooms, she could rent the two rooms for Thirty ($30.00) Dollars apiece under the two separate registrations and she could do it under either one ? A. That is correct.”
On the original hearing, in rejecting the demands of plaintiffs, the Court of Appeal resolved the dispute respecting the rental agreement in favor of defendant, it observing:
“ * * * Without detracting one whit from the credibility of the young ladies in question, we are impressed with the fact that the testimony of the defendant is: equally as positive, and, in the light of surrounding circumstances, more persuasive-It is inconceivable to our minds that this defendant, called to account for what was apparently at that time an unintentional violation of price ceilings on the basis of an ‘apartment’, would take the trouble to determine the means and methods of procuring a reclassification of the accommodations as ‘sleeping rooms’ and then rent them to these plaintiffs as an ‘apartment’. The effect of this consideration is strengthened by the further fact that the defendant registered the accommodations as sleeping rooms a little less than thirty days later,which registration was made in person on forms furnished by employees in the local Office of Price Administration in Shreveport.
******
“ * * * To conclude that a landlord would go to all o'f this trouble and effort to comply with regulations which would permit the receipt of an advanced rental, only to forego such an advantage on the occasion of the first opportunity to profit therefrom, would be, in our opinion, a reductio ad absurdum.”
The quoted reasons, assigned for thus accepting as correct defendant’s version of the rental agreement, seem to us to be logically sound. And the accepted version, we might add, finds further support in an admission of one of the plaintiffs as follows:
*403 “Q. Just one question. When you went in there, didn’t you ask ‘How are we going to arrange fo.r linens for this third girl to sleep? A. Well, we asked her if she would furnish the linens, and she said, ‘Yes.’ She would furnish the linens. And, after she told us we could sleep on the day 'bed — and she said at first she wasn’t going to furnish linens for that — and then she said she would.
“Q. And she did? A. Yes.”
The opinion rendered on the rehearing does not clearly show that the Court of Appeal repudiated its earlier factual finding. Rather, it appears that the later award in favor of plaintiffs (for the alleged over charge plus attorney’s fees) primarily was for the following assigned reason:
“Granting for the sake of argument, that defendant told plaintiffs at the time she rented the apartment that she was renting the living room and bed room separately as sleeping rooms at the rate of $30 per month each and that the remaining $5 was for kitchen privileges at the rate of $5 per month, andj even granting the mutual consent of lessor and lessee, the fact remains that the whole arrangement was obviously an evasion, either directly or indirectly of the maximum rental ceiling of $45 placed on the apartment by the regional director, and the collection of rentals above the ceiling was in violation of Section 91 above quoted.”
It was principally because of this reasoning that the writ of certiorari issued, we having entertained doubt that the suggested evasion (especially in view of the unrescinded registrations as bed rooms) had been committed by defendant.
Section 91 of the Federal regulations for housing, to which reference was made, provides in substance that the maximum rent and other stipulated requirements shall not be evaded, either directly or indirectly. 31 C.J.S., at page 471, defines “evasion”, distinguishing it from the word “avoidance”, as follows: “Act of eluding or avoiding, avoidance by artifice. In a particular connection, the term implies a wrongful act as distinguished from an avoidance permitted by law.”
In renting her quarters to these plaintiffs defendant performed no wrongful, fraudulent or illegal act. Her actions amounted only to the legally permitted avoidance of an alternate and a lower rental' ceiling. That she might do this without subjecting'herself to legal or criminal penalties is amply shown by the aforementioned testimony of the Rent Director and by the literature of the OPA.
For the reasons assigned the decision of the Court of Appeal on rehearing is set aside and that which was rendered by it on the original hearing is reinstated and now made the Judgment of this court. Costs of the proceedings here are to be paid by plaintiffs.