546 A.2d 1115

Mallie HORSLEY, Appellant,

v.

PHILADELPHIA BOARD OF PENSIONS AND RETIRE-MENT and City of Philadelphia, Appellees.

Supreme Court of Pennsylvania.

Argued Dec. 8, 1987.

Decided Aug. 17, 1988.

Thomas S. McNamara, Philadelphia, for appellant.

Kenneth Smukler, Asst. City Sol. Ralph J. Teti, Deputy City Sol., Mary Ellen Krober, Philadelphia, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

Appellant appeals from the Commonwealth Court's affirmance of the order of the Court of Common Pleas of Philadelphia County. That order upheld the decision of the Philadelphia Board of Pensions and Retirement, which suspended the retirement benefits of her husband, Benjamin Horsley, Jr., pursuant to Section 217 of the Municipal Retirement System Ordinance [1] of the City of Philadelphia.

1. The provision of the ordinance pertaining to disqualification reads in pertinent part:

*Section 217. Disqualifications.*

217.1 Notwithstanding any other provision of this Article, no employee nor any beneficiary designated by or for any employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of contribution paid into the Retirement System, without interest, if such employee

(a) pleads or is finally found guilty, or pleads no defense, in any court, to any of the following:

(1) Perjury committed in connection with his official duties or in any affidavit or proceeding concerning his official duties or conduct;

(2) Acceptance of a bribe for the performance, or affecting the performance or for the non-performance of his official duties, or the offering or giving of a bribe to any other City employee or employee of the Commonwealth of Pennsylvania or of the United States for the performance or affecting the performance or for the non-performance of his official duties;

(3) Engaging in graft or corruption incident to or in connection with his office or employment constituting a violation of the laws of the Commonwealth of Pennsylvania or the United States;

(4) Theft, embezzlement, wilful misapplication, or other illegal taking of funds or property of the City, or those of any official agency of the City, or agency engaged in performing any governmental function for the City or the Commonwealth of Pennsylvania;

(5) Malfeasance in his office or employment;

The underlying facts of this controversy are not in dispute.

Appellant's husband was employed in various positions with the Philadelphia Department of Licenses and Inspections for nearly twenty years before budget reductions forced his early retirement in August of 1978. His last position with the Department was that of a Housing Rehabilitation Specialist with the Urban Homestead Program operated by the Philadelphia Office of Housing and Community Development. Shortly after his layoff Mr. Horsley filed an application for retirement benefits by virtue of his membership in the Municipal Retirement System. Upon approval by the Board Mr. Horsley began receiving monthly retirement payments in the amount of $869.89.

Approximately eight months into retirement, on April 10, 1979, Benjamin Horsley, along with two fellow employees, was indicted by a federal grand jury in the United States District Court for the Eastern District of Pennsylvania on extortion charges in violation of the Hobbs Act.[2] The indictment charged that Mr. Horsley, while employed by the City, conspired to and did extort money from certain building contractors doing business or wishing to do business with the Urban Homestead Program. On the eve of trial Mr. Horsley pled guilty to two counts of the indictment, and on November 2, 1979, he was sentenced to five years probation and a $2,500 fine.

Meanwhile, Mr. Horsley continued to receive his monthly pension check from the Municipal Retirement System. It was not until September 1, 1983, nearly five years after his separation from the City, that he was notified by the Board that his pension benefits were being suspended.

The sequence of events leading up to the suspension of benefits are as follows. On February 8, 1982, the Executive Director of the Board, Anthony Witlin, wrote to a

(6) Commission of a felony or crime of violence under the laws of the Commonwealth of Pennsylvania or of the United States;
(7) Engaging in a conspiracy to commit any of the foregoing[.]

2. 18 U.S.C. § 1951.

Deputy City Solicitor, Tyler Wren, with information concerning Mr. Horsley's pension benefits.[3] The Board, however, received no response from the Solicitor's office.

It was not until August, 1983, that the Board sought information, this time from the Office of Housing and Community Development, regarding any former City employee that may be receiving pension benefits in violation of Section 217 of the ordinance. To this inquiry the Director of the Housing and Community Development agency informed the Board that Benjamin Horsley was implicated in the above mentioned kickback scheme.

With this information in hand the Board again contacted the Solicitor's office, in the person of Ralph J. Teti, a Deputy City Solicitor, and renewed its request for advice concerning the continued payment of retirement benefits to Benjamin Horsley. In a memorandum dated August 29, 1983, Teti advised the Board that Mr. Horsley fell within the ambit of Section 217. This determination was predicated upon a Formal Opinion from the Solicitor's Office, filed on February 3, 1983, which determined, *inter alia*, that the disqualification provision of the ordinance was applicable to a retired employee for offenses committed during his or her employment with the City. Based upon this legal advice, which the Board was bound to follow pursuant to Section 8–410 of the Philadelphia Home Rule Charter, the Board suspended benefits on September 1, 1983.

Mr. Horsley immediately requested a hearing before the Board as allowed by the Pennsylvania Local Agency Law, 2 Pa.C.S. § 553.[4] He wished to address what he felt were both procedural due process violations by the Board's actions and violations of the Local Agency Law. On February 23, 1984, a hearing was held before a panel of three members of the Board, consisting of two elected employee representatives, as provided under the Home Rule Charter,

3. It is difficult to discern from this letter or the record exactly who initiated the inquiry into whether Mr. Horsley fell within the scope of the disqualification provision of the ordinance.

4. Act of April 28, 1978, P.L. 202, No. 53, § 5.

and a designated alternate from the City Controller's office. In addition to the above individuals the Executive Director of the Board was in attendance, along with an Assistant City Solicitor who appeared solely in an advisory capacity.

At the hearing Mr. Horsley's counsel argued against the applicability of Section 217, contending that the disqualification provision of the ordinance spoke only to current employees of the City. Additionally, counsel argued that the events leading up to the suspension of benefits violated Mr. Horsley's procedural due process rights due to improper commingling of the Board's adjudicatory and prosecutorial functions. Absent from the hearing was any dispute regarding the underlying facts.

The panel members reconvened on May 20, 1984, and unanimously recommended to the Board to continue suspension of Mr. Horsley's retirement benefits. The Board adopted this recommendation.

On appeal to the court of common pleas the Board's suspension was upheld. This order was then affirmed by the Commonwealth Court.[5] Benjamin Horsley petitioned this Court for allowance of appeal, which we granted. We also affirm.

Permission to appeal was granted in this case to address two issues: the first involves an interpretation of the language of the ordinance to determine whether the disqualification provision applies to retired City employees; the second is whether the various roles played by individuals in the City Solicitor's office constituted impermissible commingling of the Board's adjudicatory and prosecutorial functions.

■ Appellant,[6] in her first issue, advances the following argument: since Section 217 only makes reference to an "employee", and that term is defined in the ordinance as

5. *Horsley v. Philadelphia Board of Pensions and Retirement,* 97 Pa. Cmwlth. 558, 510 A.2d 841 (1986).

6. During the pendency of the petition for allowance of appeal Benjamin Horsely died. As a result Mallie Horsely, the wife of Benjamin Horsely and administratrix of the estate, was substituted as the appellant.

"any elected or appointed officer or employee who is paid out of the Treasury of the City", the disqualification provision did not apply to her husband because as a retiree he was not paid out of the City's Treasury.[7] She attempts to bolster this argument by asserting that Section 217 is penal in nature and as such must be strictly construed. *See* 1 Pa.C.S. § 1928(b)(1).

With statutory interpretation questions such as this, it is instructive to refer to the Statutory Construction Act of 1972.[8] That Act provides, *inter alia:* that the object of all interpretation and construction of legislation is to ascertain and effectuate the intention of the drafters, 1 Pa.C.S. § 1921(a); and that the drafters of a statute do not intend a result that is absurd, impossible of execution or unreasonable, 1 Pa.C.S. § 1922(1).

Appellant has placed great reliance on her penal-strict construction argument. However, even assuming that we accept the argument that Section 217 is a penal provision, we cannot accept the argument that the section does not apply to Mr. Horsley. As noted by the appellee the prefatory statement to the definitions upon which appellant relies states clearly that the definitions are effective "[u]nless a different meaning is required by the context." [9] We believe the situation posed by this case is of a type which the drafters had in mind when they mandated that the context in which a term appears shall be given precedence over the ordinance's general definitions.

**7.** The definitional section of the ordinance provides in relevant part: *Section 201. Definitions. Unless a different meaning is plainly required by the context,* the following words and phrases used in this article shall have the following meanings:

    (a) Employee. Any elected or appointed officer or employee who is paid out of the Treasury of the City;

    . . . .

    (g) Retired Member. Any retired employee of the City who is receiving or entitled to receive retirement benefits from any division of the Municipal Retirement System.

(Emphasis added).

**8.** Act of December 6, 1972, No. 290, § 3, 1 Pa.C.S. § 1501 *et seq.*

**9.** *See* footnote 7, *supra.*

Unquestionably, the clear intent of the City Council in enacting Section 217 was to disqualify those employees who commit crimes while in the City's employ from receiving retirement benefits. Given this intent the ultimate time of discovery of a person's felonious acts seems of no moment. To hold otherwise would unfairly advantage those corrupt and felonious City employees who are fortuitous enough to avoid detection of their crimes until after they leave the City's employ: a result which would be both absurd and unreasonable.[10]

Having determined that the disqualification provision was applicable to Mr. Horsley, we next turn to appellant's due process arguments.

Appellant attacks the Board's adjudication on several due process grounds. First, appellant argues that the various functions performed by the City Solicitor's office violated Mr. Horsley's due process right to a fair hearing. Specifically she complains: (1) a Deputy City Solicitor, based upon the Formal Opinion rendered by the then acting City Solicitor, advised and recommended to the Board's executive director that he initially suspend retirement benefits; (2) an Assistant City Solicitor was available as legal advisor to the panel during the hearing; and (3) the City Solicitor was a member of the Board that ultimately voted to continue suspension of benefits.[11] It is upon this procedural matrix that appellant asserts that there was an improper comming-

10. Appellant advances a rather preposterous argument that to accept her interpretation would encourage corrupt officials to retire before they get caught, thereby cleansing the system. We find it impossible to believe that Philadelphia City Council intended such a bonus incentive plan for corrupt City employees.

11. Under the Philadelphia Home Rule Charter, 351 Pa. Code § 3.3–803, the City Solicitor shall serve as a voting member of the Board. Section 3–803 provides in relevant part:

   The Board of Pensions and Retirement shall consist of the Director of Finance, who shall be its chairman, the Managing Director, the City Controller, the City Solicitor, the Personnel Director and four other persons who shall be elected to serve on the Board by the employees in the civil service in such manner as shall be determined by the Board.

   The record is not clear whether the City Solicitor participated in the Board's final decision.

ling of adjudicatory and prosecutorial functions by the Board. We do not agree.

It should be emphasized that the hearing about which appellant complains was not a fact finding hearing. Mr. Horsley, through his counsel, admitted all the facts upon which the Board based its decision, and chose instead to argue the legal question of whether Section 217 applied to his case.[12] Consequently, all that was before the panel, and ultimately the Board, was an application of the law to the facts of the case; and the Board's decision was and is fully reviewable on appeal.

■ In *Pennsylvania Human Relations Commission v. Thorp, Reed & Armstrong*, 25 Pa.Cmwlth. 295, 361 A.2d 497 (1976) the Commonwealth Court remarked:

[T]he most critical function in the prosecution and adjudication of administrative cases is in the resolution of disputed facts because the findings of fact which result from administrative proceedings are subject to only limited appellate review. The fact finding process, therefore, must be afforded the broadest dimensions of constitutional protection.

*Id.* at 302, 361 A.2d at 501. With this observation we agree. Thus, it is primarily in a fact finding situation where the possibility of prejudice is most dangerous. Where, however, an administrative tribunal is applying its interpretation of the law to undisputed facts, a decision which is fully reviewable, any possibility of prejudice can be effectively cured by the independent review of an appellate court.

■ In this case the Board was bound by terms of the Philadelphia Home Rule Charter to follow the legal advice of the City Solicitor. *See* Section 8–410 of the Philadelphia Home Rule Charter.[13] The composition of the Board was

12. Mr. Horsley's attorney also argued the due process issues, thus preserving them for appeal.

13. Section 8–410 of the Charter provides in relevant part:

Whenever any officer, department, board or commission shall require legal advice concerning his or its official business or whenever any legal question or dispute arises or litigation is commenced

also dictated by the Charter. Once Mr. Horsley admitted to the facts, the Board's discretion ended. Therefore, although the decision of the Board was adverse to him, we cannot say that decision resulted from any prejudice on the Board's part since the adverse decision was the *only* decision which the Board had the power to render.[14]

In summary, since Mr. Horsley admitted all of the facts which formed the basis of the Board's decision, and given those facts the Board was required to suspend his benefits, appellant has failed to show that the Board acted with bias, or that the possibility of bias existed. In addition, Mr. Horsley's due process rights were at all times preserved by his unqualified right to have the Board's legal interpretation reviewed by an appellate court. Therefore, we find no merit to appellant's arguments.[15] While we find no commingling of functions here, by virtue of the admitted facts,

or to be commenced in which any officer, department, board or commission is officially concerned or whenever any taxes or other accounts of whatever kind due the City remain overdue and unpaid for a period of ninety days it shall be the duty of such officer, department, board or commission to refer the same to the Law Department.

It shall be the duty of any officer, department, board or commission having requested and received legal advice from the Law Department regarding his or its official duty, to follow the same; and when any officer shall follow the advice given him in writing by the Law Department he shall not be liable to any way for so doing upon his official bond or otherwise.

14. Appellant also asserts a challenge to the constitutionality of Section 8–410 of the Charter. Section 8–410 merely requires that the various administrative agencies of the City must heed the advice of the city's chief legal officer. This seems like a sound management decision and we detect nothing improper about such a requirement.

15. In this appeal appellant also contends that the Board's action effected an unlawful forfeiture of a vested property right, and that the Board failed to provide written findings of facts and conclusions of law. We agree with the Commonwealth Court's disposition of these issues and we need not address them in great detail. Regarding appellant's "vested interest" argument, we emphasize that this case is *not* similar to *Bellomini v. State Employees' Retirement Board,* 498 Pa. 204, 445 A.2d 737 (1982) since the present disqualification provision was a part of the pension rules during the entire time of Mr. Horsley's employment with the City. As for the Board's lack of factual findings, this was a mere technical defect without substantial ramifications since there were no factual matters in dispute.

the penalties however necessary are severe: the loss of a lifetime's effort. The possibility of commingled functions in such cases must be carefully scrutinized and regularity of proceedings carefully followed.

Accordingly, the order of the Commonwealth Court is affirmed.

PAPADAKOS, J., concurs in the result.