**Robert L. WOODS and Joy Woods, Appellants,**

**v.**

**CITY OF LAWTON, Board of Commissioners, Employee Retirement System of the City of Lawton, Comanche County, Oklahoma, Appellees.**

**No. 70662.**

Supreme Court of Oklahoma.

Dec. 22, 1992.

Rehearing Denied Feb. 9, 1993.

Greg McCracken, Miskovsky & McCracken, Oklahoma City, for appellants.

Wiley L. Williams, Jr., City Atty., Lawton, for appellees.

LAVENDER, Justice.

A city employee works the requisite number of years as would qualify him for pension benefits. After his retirement, he is convicted for criminal offenses committed against the city while he was employed. A city ordinance dictated forfeiture of all rights and benefits under the retirement system upon conviction of theft or embezzlement if the criminal acts were committed before the employee retired. It is not disputed that this clause was in effect prior to the employee's eligibility for the benefits. Based on this ordinance, the trial court found the employee's right to the pension had not vested. We affirm.

I.

Robert L. Woods, worked for the City of Lawton for approximately 29 years and 8 months. He had completed 25 years of service as of April, 1981. The City of Lawton Municipal Code Section 17–98(27) states:

Early Retirement Date—the first date of the month following both: (a) the date that member (i) has completed ten years of creditable service and attained the age of fifty-two (52) years or (ii) completed twenty-five (25) years of creditable service, regardless of age, whichever of (i) and (ii) is earlier, and (b) the date that such member elects to receive retirement benefits in accordance with the provisions hereof.

Under this early retirement provision, Woods submitted an application to the Board of Commissioners of the Employee Retirement System of the City of Lawton for retirement. He retired in December, 1985 and from January, 1986 until September, 1987 he received $726.97 monthly retirement benefits.

On August 21, 1987, Woods pled guilty in the United States District Court for the Western District of Oklahoma to the charge of devising a scheme to defraud and obtain money from the City of Lawton while employed by the City in violation of 18 U.S.C. Sections 1341 and 1342. Lawton's city ordinance Section 17–108(f) provided that:

*Any member who is found guilty* in a court of competent jurisdiction *of committing, aiding or abetting any embezzlement or theft from the city, or bribery in connection with the employment committed prior to the retirement,* or any member whose employment is terminated by reason of his admitted commitment aiding or abetting an embezzlement or theft from the city or such bribery *shall forfeit all rights and benefits under the retirement system* except the return of his member's accumulated contributions as of his date of termination. (Emphasis added).

Accordingly, on September 22, 1987, the Board of Commissioners of the Employee Retirement System of the City of Lawton (Board) voted to terminate Woods' retirement benefits.

Woods appealed this decision for reconsideration before the Board. He argued that under Oklahoma case law, upon meeting the minimum 25 years of service, his right to the pension "vested" on April, 1981. Because the offenses occurred between October, 1983 and December, 1985 or *after* such "vesting" occurred, Woods contends that the denial of his benefits for those 25 years under the Lawton code was unconstitutional. The Board voted to deny the request for reinstatement of benefits.

Woods filed a Petition for Declaratory Judgment in district court challenging the constitutionality of the city ordinance. The trial court determined the ordinance valid and constitutional as applied to Woods. The court of appeals reversed citing *Board of Trustees v. Weed.*[1] That court determined that Woods had fulfilled all pension eligibility requirements *prior* to the illegal acts, and that his rights had "vested" even though he had not actually retired and that

1. 719 P.2d 1276 (Okla.1986).

these rights could not be "divested" by his criminal actions. We previously granted certiorari.

## II.

"It has generally been held that public employees, who have voluntarily contributed to such a retirement fund, have a vested, contractual right to receive the prescribed benefits from it once their payment becomes due."[2] If Woods had an unqualified right to his retirement benefits, then the city ordinance requiring forfeiture of those benefits would be unconstitutional. Okla. Const. art. 2, § 15 provides:

No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed. *No conviction shall work a corruption of blood or forfeiture of estate:* Provided, that this provision shall not prohibit the imposition of pecuniary penalties. (Emphasis added).

Therefore, we must determine whether Woods' rights were absolute such as would preclude forfeiture.

In *Baker v. Oklahoma Firefighters Pension,*[3] we stated:

A 'vested right' is the power to do certain actions or possess certain things lawfully, and is substantially a property right, and may be created either by common law, by statute, or by contract. And when it has been once created, and has become absolute, it is protected from the invasion of the Legislature by those provisions in the Constitution which apply to such rights. And a failure to exercise a vested right before the passage of a subsequent statute, which seeks to divest it, in no way affects or lessens that right.

. . . .

[U]nder Oklahoma law, the right to a pension would vest, or become absolute, upon the pension recipient's becoming eligible for payment of the pension. . . . We have also stated that the right of a claimant to a pension is controlled by the terms of the statute in effect when the right to a pension vests and have implied that vesting occurs as of the date of retirement.

. . . .

[I]t is apparent that the view of pension benefit rights taken in this jurisdiction has been that such rights neither vest nor accrue until the contract between the state and the beneficiary comes into existence.

The exact question presented in this case has not been before us, although, we did consider in *Board of Trustees v. Weed,*[4] whether a vested right to a pension benefit could be forfeited as a consequence of a felony conviction for offenses committed *after* retirement. In that case, we concluded that on meeting the requirement of *meritorious* service *prior* to retirement, the right to such benefit was a substantial property right and that to divest one of this right was an unconstitutional forfeiture of estate under the Oklahoma Constitution.

## III.

Therefore, neither *Baker*[5] nor *Weed* is dispositive of the issue before us today. Woods had performed twenty-five years of service and was eligible for retirement as of 1981. The offenses for which he was subsequently convicted were committed *after* those twenty-five years of service but *prior* to his retirement. Woods argues that under *Weed,* his right to his pension vested at the time he was *eligible* for retirement or in 1981 and he wants his retirement for those twenty-five years of service.

In *Weed* we stated that "[t]he key distinguishing fact among the jurisdictions which have addressed this issue is whether the

---

2. *Board of Trustees v. Kern,* 366 P.2d 415, 418 (Okla.1961).

3. 718 P.2d 348, 350–51 (Okla.1986).

4. 719 P.2d 1276, 1277–79 (Okla.1986).

5. The *Baker* case involved the effect of repealed legislation on retirement benefits. The employees were trying to avoid an ex post facto law by keeping an old law in effect that formed part of their employment contract. Woods on the other hand is trying to avoid the terms of his contract.

felony conviction *or misconduct* occurred while the employee *was still actively fulfilling pension eligibility requirements* or after the pension benefits were vested." [6] In the case at bar, the city of Lawton had an ordinance in effect that required forfeiture of all rights and benefits under the retirement system upon conviction for theft or embezzlement if the offenses were committed *prior* to retirement. In other words, up until the time Woods retired, he was required to continue fulfilling eligibility requirements, one of which was that he not commit any of the offenses designated in the ordinance or it would result in the forfeiture of his pension. While Woods was "eligible" for retirement in 1981, his right to his pension did not vest because the ordinance in effect precluded vesting *if Woods committed certain offenses prior to his retirement* which in fact did occur.

The rights of a government employee are defined by the limits of the contract. Certainly, the city may provide that vesting be subject to contingencies which can cause a forfeiture. In *Kerner v. State Emp. Retirement System*,[7] a case similar to our's, the court considered plaintiff's argument that his rights to those benefits had "vested" since he had begun receiving monthly payments prior to his convictions for offenses committed while in office. The Kerner court stated:

> The flaw in plaintiff's reading of the statute was emphasized by the appellate court when it noted that under plaintiff's theory, an employee *need only retire*

prior to his conviction of a felony in order to render the entire statute meaningless. Certainly such easy circumvention of the law's purpose cannot have been intended.

. . . .

Plaintiff urges, however, that this conclusion renders the statute unconstitutional under article XIII, section 5, of the Illinois Constitution of 1970, which provides:

> 'Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired.'

Plaintiff does not explain how enforcement of this condition, to which the parties agreed and which has existed throughout the duration of the contract, can become an unconstitutional impairment of the benefits of that contract. . . .

Membership in the System was sought with knowledge of this condition, and it clearly cannot be said to impair or diminish the benefits within the meaning of the constitutional provision.[8]

We agree with the Kerner court and apply the holding to our own case. Further, we acknowledge, as did the Kerner court, that any other interpretation would circumvent the intent of the ordinance and render it meaningless.[9] Woods breached the *contractual* terms of the ordinance by

---

6. *Weed,* 719 P.2d at 1277 (emphasis added).

7. 72 Ill.2d 507, 21 Ill.Dec. 879, 382 N.E.2d 243 (1978) *cert. denied, Kerner v. State Emp. Retirement,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 397 (1979).

8. *Kerner,* 21 Ill.Dec. at 882–83, 382 N.E.2d at 246–47 (emphasis added). The Kerner court also considered and dismissed plaintiff's claims of "corruption of blood and forfeiture of estate, cruel and unusual punishment and due process".

9. *Accord Horsley v. BD. of Pen. & Retirement,* 519 Pa. 264, 546 A.2d 1115 (1988). In *Horsley* the court was interpreting the effect of a *city ordinance.* The court stated:

> Unquestionably, the clear intent of the City Council ... was to disqualify those employees who commit crimes while in the City's employ

from receiving retirement benefits. Given this intent the ultimate time of discovery of a person's felonious acts **seems of no moment.** To hold otherwise would unfairly advantage those corrupt and felonious City employees who are fortuitous enough to avoid detection of their crimes until after they leave the City's employ: a result which would be both **absurd** and **unreasonable.** *Id.* [546 A.2d] at 1118. Appellant advances a rather **preposterous** argument that to accept her interpretation would encourage corrupt officials to retire before they get caught, thereby cleansing the system. We find it impossible to believe that Philadelphia City Council intended such a bonus incentive plan for corrupt City employees. *Id.* at 1118 n. 10.

committing offenses against the city while employed and thereby, forfeiting his right to such benefits. Equally without merit is the contention that because Woods began receiving his pension in 1985 this somehow absolved his criminal actions so as to "vest" his right. Woods' only right is to the return of his accumulated contributions acquired as of the date of his termination as provided for under the ordinance.[10]

Obviously, the purpose of the city ordinance was to discourage criminal activity against the city by its employees by denying an employee, convicted of such offenses, his retirement benefits to which he otherwise would be entitled. Moreover, the ordinance served the dual purpose of promoting the public's right to faithful service from those holding governmental positions. Indeed, we could cite approvingly to case law from other jurisdictions that have recognized "honorable" service as an implied indispensable requisite for entitlement to a government pension.[11]

In our case, however, the ordinance on its face mandated such service as would not violate the ordinance for the duration of employment in order to entitle one to a pension upon retirement. The order of the trial court is affirmed.

OPALA, C.J., and SIMMS, HARGRAVE, ALMA WILSON and WATT, JJ., concur.

KAUGER, J., concurs in part, dissents in part.

HODGES, V.C.J., and SUMMERS, J., dissent.

**10.** Section 17–108(f) states that a member is entitled to the return of his accumulated contributions acquired as of his date of termination.

**11.** *Masse v. Public Employees' Retire. Sys.*, 87 N.J. 252, 432 A.2d 1339 (1981); *West Virginia Public Employees Retirement System v. Dodd*, 183 W.Va. 544, 396 S.E.2d 725 (1990) (even without an express statutory requirement of honorable public service, "'[i]t is, of course, axiomatic that one of the fundamental purposes of the pensioning of civil servants is to secure good behavior and the maintenance of reasonable standards of discipline during service.'").

**1.** Okla. Const. Art. 2 § 15 states: "No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed. *No conviction shall work a* corruption

SUMMERS, Justice, dissenting.

I dissent because the opinion allows a result contrary to Art. 2 § 15 of the Oklahoma Constitution.[1]

The City of Lawton created a municipal employee retirement system by ordinance. The retirement procedures state that a "retirement" occurs after twenty-five years of service upon withdrawal from active employment. Also found in the ordinances is the provision for termination of retirement benefits when a member of the retirement system has been found guilty of committing, aiding or abetting any embezzlement or theft from the City of Lawton.[2] The language of the ordinance states that being "found guilty" of specified crimes forfeits the benefit.

On August 21, 1987 the employee was found guilty of devising a scheme to defraud the City of Lawton. He had previously withdrawn from municipal employment in December of 1985 and had begun receiving retirement benefits. At that time he met the conditions for retirement benefits set out by the City of Lawton, because at the time he retired no conviction had occurred.

When he retired the payments that were made to him were then authorized under the pension ordinances. He possessed those payments lawfully at that time. Generally, a "vested right" is the power to possess certain things lawfully. *In re Bomgardner*, 711 P.2d 92, 96 (Okla.1985); *Oklahoma Water Resources Board v.*

of blood or *forfeiture of estate:* Provided, that this provision shall not prohibit the imposition of pecuniary penalties." (Emphasis added).

**2.** "(f) Any member who is found guilty in a court of competent jurisdiction of committing, aiding or abetting any embezzlement or theft from the city, or bribery in connection with the employment committed prior to retirement, or any member whose employment is terminated by reason of his admitted commitment aiding or abetting an embezzlement or theft from the city or such bribery shall forfeit all rights and benefits under the retirement system except the return of his member's accumulated contributions as of his date of termination."

*Central Oklahoma Master Conservancy District,* 464 P.2d 748, 755 (1966). Specifically, with regard to pension benefits we said in *Board of Trustees of Police Pension v. Weed,* 719 P.2d 1276 (Okla.1986): "most courts now agree that public employees who contribute to a pension fund pursuant to their employment contract have a vested, contractual right to receive the benefits thereof, when the conditions of service are satisfied and payment becomes due." *Id.* 719 P.2d at 1277. Upon retirement in 1985 the conditions of (1) 25 years of service and (2) withdrawing from active municipal employment were met. The benefits vested at that time, and the City began making the pension payments.

The question before us is whether a retirement benefit may "conditionally vest", or vest subject to a condition subsequent that will operate retroactively to deny all pension benefits, including those previously paid, when the condition subsequent is being found guilty of a crime. In other words, may a conviction of a crime be used to "divest" pension benefits?[3] In *Board of Trustees of Police Pension v. Weed,* 719 P.2d 1276 (Okla.1986) the retirement system argued that occurrence of a condition subsequent to retirement, i.e., conviction of a felony, caused the employee to forfeit his retirement benefits. This court, however, said:

> Upon meritorious retirement appellee obtained a substantial property right in his pension and insofar as 11 O.S.1971 § 541p and Oklahoma City Code § 2–342 (1970) purport to divest appellee of his pension based on his felony conviction,

they are unconstitutional as amounting to a forfeiture of estate in violation of Okla. Const. art. 2, § 15.

*Id.* 719 P.2d at 1279.

This language clearly indicates that an employer may not use the conviction of a crime as a condition subsequent to deny vested retirement benefits.

It is true that in *Weed* we also noted in dicta that the illegal activity did not occur during the employee's active duty with his employer. *Id.* 719 P.2d at 1278–1279. The observation was unnecessary for resolution of the controversy, and thus, should not dispose of today's question.[4] In explaining why this is so some observations on the majority opinion must be made—first, on its theory that the benefits never vested and the type of forfeiture involved, and second, on its reliance upon *Kerner v. State Emp. Retirement System,* 72 Ill.2d 507, 21 Ill.Dec. 879, 382 N.E.2d 243 (1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 397 (1979). (I hereinafter refer to this case as *"Kerner* II" to distinguish it from the earlier *Kerner* case in the Illinois Court of Appeals, which I will call *"Kerner* I".)

## I. DID THE PENSION BENEFITS VEST?

The majority states that the benefits did not vest, although the employee retired in 1985 and received retirement benefits until 1987. Could a pension system argue in good faith that pension benefits such as these never vest, and that it is free to change or alter benefits for a particular

---

**3.** I note that I am not alone in characterizing this type of controversy with this language. See *Kerner v. State Emp. Retirement System,* 53 Ill. App.3d 747, 11 Ill.Dec. 510, 513–514, 368 N.E.2d 1118, 1121–1122 (1987) where that court explained that the condition subsequent of a conviction could "divest" a pension. Pursuant to the ordinance and prior to the date of the conviction the City possessed a duty to make the retirement payments and Woods possessed a corresponding right to the payments. In other words, the City possessed no "present right" i.e., a "no-right" to the payments made to Woods between 1985 and 1987. *See* W. Hohfeld, *Fundamental Legal Conceptions,* 36–38 (1923). Pursuant to the ordinance and upon the date of the conviction the City's duty to make the 1985–

1987 payments and Woods' corresponding right to the payments were extinguished. In addition, Woods' right to future payments was also extinguished by the condition subsequent. See the opinion by Justice Holmes for the Court in *Baltimore Shipbuilding Co. v. Baltimore,* 195 U.S. 375, 382, 25 S.Ct. 50, 51–52, 49 L.Ed. 242 (1904) discussing a present right *in rem* and property subject to a forfeiture by a condition subsequent.

**4.** This court has long recognized that dicta is not dispositive. See *Atchison T. & S.F. Ry. Co. v. Corporation Commission of State of Oklahoma,* 68 Okla. 1, 170 P. 1156, 1158 (1918).

person because there is a possibility, however remote, that the person may be found guilty of the prohibited crime at some unknown future date? Not likely.

The majority states that no vesting occurred because the ordinance "precluded vesting *if Woods committed certain offenses prior to his retirement* which in fact did occur." This statement is incorrect on two grounds. First, what the ordinance did provide was that: "Any member who is *found guilty in a court of competent jurisdiction of committing,* ... [specified crimes] prior to retirement ... shall forfeit all rights and benefits under the retirement system...." (Emphasis and explanation added). The forfeiture of benefits was predicated upon being *found guilty* by a court and *not* the mere commission of the criminal act. Forfeiture language must, of course, be strictly construed.[5]

Secondly, the ordinance does not state that pension benefits will be "precluded from vesting" by the occurrence of prohibited acts, but that a member shall "forfeit" pension rights under certain circumstances. This difference between not receiving benefits and loosing (forfeiting) benefits already obtained obviously makes a difference because of the constitutional prohibition on forfeiting pension rights. The theory of the majority appears to be that the "contract" provided a condition precedent;[6] i.e., no contractual rights (pension rights) would vest unless at the date of retirement (date of City's performance due under retirement contract) an employee had not committed a criminal act. I view the language of the ordinance as a condition subsequent.[7]

The finding of guilty in this case did not occur until after retirement and after the pension rights had vested. The forfeiture can not occur under the ordinance without a finding of guilty by a court of competent jurisdiction. It is true that the ordinance does not limit when the finding of guilty must occur, and that under the terms of the ordinance the finding of guilty may occur after retirement. This issue is exactly what is presented by the case before us: Can a finding of guilty be used to forfeit a pension benefit when the crime occurred prior to retirement but the finding of guilty after retirement? The majority says yes, it may, because the crime occurred during employment and prior to vesting. I say it may not because the ordinance-required condition of a finding of guilty (i.e., conviction) used to forfeit the pension rights occurred *after vesting* and is thus constitutionally prohibited.

Historically, "criminal" forfeiture jurisprudence included *in rem* forfeitures and *in personam* forfeitures. An *in rem* forfeiture was a civil proceeding directly against the property, the title to the property passed to the state upon the commission of the criminal act, and no finding of guilty was needed to forfeit the property.[8]

---

5. A statute authorizing a forfeiture must be strictly construed. *Willhite v. Willhite,* 546 P.2d 612 (Okla.1976); *Pirkey v. State ex rel. Martin,* 327 P.2d 463 (Okla.1958); *State v. Fish,* 747 P.2d 956 (Okla.1987).

6. "A condition precedent of a contract is one which calls for the performance of some act or the happening of some event after the contract is entered into and upon the performance or happening of which its obligations are made to depend." *Rollins v. Rayhill,* 200 Okla. 192, 191 P.2d 934, 937 (1948). A condition precedent is a condition that must be met before the obligation under a contract becomes due. 3A *Corbin on Contracts,* § 628 (1960). In the *Restatement (Second) of Contracts,* (1979), the terms condition precedent and condition subsequent are not used but the concept of a condition precedent is manifested therein as a "condition" that must be met prior to performance becoming due. *See*

*Restatement* at § 224 Comment e. This court's use of these terms is consistent with my analysis. See *Franklin v. Margay Oil Corporation,* 194 Okla. 519, 153 P.2d 486, 499 (1944) wherein we explained that a condition subsequent operates upon an estate already created and opens it to defeat while a condition precedent is a condition that must be performed before an estate can vest. *See also Fraley v. Wilkinson,* 79 Okla. 21, 191 P. 156, 157 (1920).

7. See footnote 3 *supra,* and accompanying text.

8. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 684, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452 (1974); Hughes & O'Connell, *In Personam (Criminal) Forfeiture and Federal Drug Felonies: an Expansion of a Harsh English Tradition into Modern Dilemma,* 11 Pepperdine L.Rev. 613, 617–618 (1984); Note, *Tempering the*

An *in personam* forfeiture was a proceeding against the criminal defendant, title to the property passed on the date of the conviction and the date of the conviction could not relate back prior to the date of the conviction.[9]

Oklahoma, by Art. II, Sec. 15, has prohibited *in personam*, or criminal forfeiture: "No conviction shall work a ... forfeiture of estate." The ordinance attempts to wire around this by relating the effective date of Woods' conviction back to the date of termination. This is improper. Although "relation", as a legal fiction, allows an act done at one time to be deemed by the law to have been done at some earlier time, it was not used to relate back a conviction so as to forfeit property upon conviction in *in personam* situations.[10] Even in England such was not allowed. In *Whitaker v. Wisbey*, [1852] 12 C.B. 44, 138 E.R. 817, the court relied on Lord Mansfield's opinion in *Johnson v. Smith*, [1760] 2 Burr. 950, 97 E.R. 647,[11] and explained that a fiction of law that the date of conviction relates back to the first day of the assizes could not be used to invalidate a transfer of the defendant's property between the first day of the assizes and the date of the conviction; thus a forfeiture upon conviction could not relate back so as to void the defendant's transfer. Lawton's ordinance attempts to do what the court in England could not do, and what is prohibited by Okla. Const. Art. II § 15, and that is to "back-date" a conviction for the purpose of forfeiting property.

## II. DOES THE MAJORITY'S ASSERTION THAT THE FORFEITURE IS BASED ON CONTRACT EXEMPT THE FORFEITURE FROM THE CONSTITUTION?

The majority states that the "rights of a government employee are defined by the limits of the contract", that this employee "breached the *contractual* terms of the ordinance", and is thus required to forfeit rights to benefits. This too deserves some discussion because it appears to state that a contractual forfeiture is different than *in personam* forfeitures, and that Art. II § 15 does not apply to a contract between a city and its employees.

The majority's theory of merely enforcing a contractual right would have some merit *if* the common law's dichotomy of public wrongs and private wrongs applied in the context of a claimed constitutional right. But it does not. A "private wrong"[12] springs from a breached duty owed to a particular individual as opposed to the public at large, and thus, a city's duty to provide a safe working environment for its employee was said to be private, and springing from the private contractual relationship with its employees as opposed to any duty to the citizenry at large. *Rhobidas v. City of Concord*, 70 N.H. 90, 47 A. 82, 87 (1900). But as recognized by the *Rhobidas* court, one exception to this rule is when a constitutional right is involved. *Id.* 47 A. at 87.

This country's constitutional jurisprudence clearly shows that a governmental entity in its capacity as an employer is subject to constitutional restraints on the employer-employee relationship, i.e. constitutional restraints on the contract-based relationship. See *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) and the separate opinions involving Michigan's Public Employment Relations Act at *Lehnert v. Ferris Faculty Association*, —— U.S. ——, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991). We

---

*relation-back doctrine: a more reasonable approach to civil forfeiture in drug cases,* 76 Va. L.Rev. 165, 165–166 n. 3 (1990); Comment, *Criminal Forfeiture: Attacking the Economic Dimension of Organized Narcotics Trafficking,* 32 Am.U.L.Rev. 227, 229 (1982). *See also State ex rel. Turpen v. A 1977 Chevrolet Pickup Truck,* 753 P.2d 1356 (Okla.1988).

**9.** *Id.*

**10.** See authority cited at footnote 8 *supra.*

**11.** The opinion by Lord Mansfield in *Johnson v. Smith, supra,* concluded that the legal fiction of relating back the date on court process, to an earlier date could not be used by a plaintiff to defeat a statute of limitations defense.

**12.** For a discussion of private wrongs and public wrongs see *Cummings v. Board of Education,* 190 Okla. 533, 125 P.2d 989, 994 (1942) and 3 W. Blackstone, *Commentaries,* 2.

recognize this principle when a constitutional right such as the non-forfeiture of property is successfully invoked against a claim based upon a contractual relationship, as was the case in *Board of Trustees of Police Pension v. Weed, supra.* Thus, characterizing the government-employer relationship with its employee as contractual does not anoint with constitutional legality the wholly government-supplied provision to the contract requiring an unconstitutional forfeiture.

The United States Supreme Court has used a balancing test and examined the specific governmental interests involved when an employee's federal constitutional rights are implicated in the context of an employment relationship with a governmental entity. *See Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). The statutory purpose for providing municipal retirement is to "encourage continuous and meritorious service on the part of the employees and thereby promote public efficiency." 11 O.S.1981 § 48–101.[13] The goal is public efficiency by continuous and meritorious service.

The question thus becomes: Can the benefit to the public from the forfeiture of property upon a conviction of a crime when that crime is against a public agency, "outweigh" the constitutional right to be free from such forfeitures? The majority speaks in language of deterrence, i.e. "to discourage criminal activity". Obviously, the government has an interest in deterring all crime, but such deterrence is, of course, insufficient to "outweigh" the anti-forfeiture provision. If it were otherwise there would be no effective Art. 2 § 15 outlawing forfeitures based on conviction of a crime.

All crimes, regardless of the immediate victim, are considered to be offenses against the public interest and common welfare, and thus State and Federal laws have been enacted to deter criminal activi-

ty. *Chicago, R.I. & P. Ry. v. Territory of Oklahoma,* 25 Okla. 238, 105 P. 677 (1909). By defining the public interest as to deter criminal activity, i.e., to punish the offender for a criminal act, the majority has allowed a governmentally enacted forfeiture of private property on the basis of the property owner's conviction of a crime when the forfeiture at hand does not qualify as one of the constitutional exceptions.

Deterrence of crime is important, and honorable government service by public employees is important. But so are those fundamental rights found in the Bill of Rights to the Oklahoma Constitution. The People, speaking by our Constitution, have specifically said that the deterrence to crimes that might be obtained by the forfeiture of property is not as important as the right to be free from forfeitures of property on account of them. Whether or not the People are wise in this matter is not before us. Until the People change their view I can not join the majority opinion.

## III. IS THE ILLINOIS DECISION IN *KERNER* PERSUASIVE?

The majority places great reliance upon *Kerner* II. In so doing it indicates its willingness to allow a legislative intent behind a municipal ordinance to outrank an express provision of the Oklahoma Constitution, and this deserves some discussion. Language in our opinion quoted from *Kerner* II with approval states in part:

> The flaw in plaintiff's reading of the statute was emphasized by the appellate court when it noted that under plaintiff's theory, an employee *need only retire prior to his conviction in order to render the statute meaningless. Certainly such easy circumvention of the law's purpose cannot have been intended.*

The opinion uses the term "circumvention", and this appears to be in the sense of "to avoid"[14] or "to manage to get around"[15] the law's purpose. There is a

---

**13.** Section 48–101 was amended in 1984 and the later version has similar language to that used here.

**14.** *See American Heritage Dictionary,* 275 (2d College ed. 1982)

**15.** *Webster's Ninth New Collegiate Dictionary,* 243 (1984).

vast difference in the meanings of the *evasion* of the law, and the *avoidance* thereof. In *Anglin v. Nasif,* 217 La. 392, 46 So.2d 309 (1950) the court explained that "evasion" means a wrongful avoidance of the law or a statute. *Id.* 46 So.2d at 311. In other words, an evasion has come to mean the commission of a wrongful act that is against a particular statute or "the law", where an "avoidance" means an act that is permitted by the law. *Anglin v. Nasif, supra.* Both an evasion and an avoidance are attempts to cause the non-application of a statute. The difference is that the former is unlawful; the latter is not.[16]

The distinction between evasion and avoidance is, or least should be, known to every tax lawyer. See *Jones v. Garner,* 250 S.C. 479, 158 S.E.2d 909, 911 (1968), where the court discussed the difference between "tax evasion" and "tax avoidance." The non-payment of taxes due under the letter of the law may be tax evasion,[17] but a taxpayer may order his or her affairs to take the most advantage the tax laws allow. For example, in *Atlantic Coast Line R. Co. v. Phillips,* 332 U.S. 168, 67 S.Ct. 1584, 91 L.Ed. 1977 (1947) the Court said:

> As to the astuteness of taxpayers in ordering their affairs so as to minimize taxes we have said that "the very meaning of a line in the law is that you intentionally may go as close to it as you can if you do not pass it."

*Id.* 332 U.S. at 172, 67 S.Ct. at 1587.

A citizen may order his or her affairs to take advantage of what the law allows. A citizen may not lawfully evade the law, but may, by resort to other laws, "avoid" the application of a statute. One of the ways to avoid a statute has been when a citizen relies on the protection afforded by a provision of either a state or Federal Constitution.

The opinion condemns an attempt to circumvent the effect of a municipal ordinance. The employee attempted to order his affairs to take advantage of what the law allows, i.e., to circumvent the ordinance by reliance upon Okla. Const. Art. 2 § 15, a provision that is found in our State Constitution in an Article entitled "Bill of Rights." To avoid or circumvent a legislative act by reliance upon a provision of either the State or Federal Bill of Rights is a hallowed tradition in our country, and should need no defense. If the ordinance is rendered meaningless, as the majority contends, it is rendered so by a provision of the State Constitution.

The majority appears to be stating that a citizen cannot rely on the protection of the State Constitution when the "purpose" or policy behind a conflicting ordinance is circumvented. Without saying it in so many words the opinion adopts the relation back doctrine because "such easy circumvention of the law's purpose cannot have been intended." Of course a legislative body does not pass an act with the intent that it be avoided, easily or not. Although such an intent may be a basis for construing an ambiguous ordinance consistent with the State or Federal Constitution,[18] such an intent is not sufficient to validate an otherwise unconstitutional ordinance. See *Hynes v. Mayor and Council of Borough of Oradell,* 425 U.S. 610, 616–619, 96 S.Ct. 1755, 1758–1760, 48 L.Ed.2d 243 (1975). Simply stated, the fact that the City of Lawton may not have intended its ordinance to be circumvented does not anoint the ordinance with constitutional propriety.

There is yet another problem with relying on Kerner II. The primary issue in *Kerner v. State Emp. Retirement System,* 53 Ill.App.3d 747, 11 Ill.Dec. 510, 368 N.E.2d 1118 (1977) (*Kerner* I) was whether

---

**16.** The definition of "evasion", however, was synonymous with "avoidance" in the early part of this century. *See Bullen v. State of Wisconsin,* 240 U.S. 625, 36 S.Ct. 473, 60 L.Ed. 830 (1916); E. Bander, *Justice Holmes Ex Cathedra,* 84 (1966); E. Tutt, *A Yankee Lawyer,* 295 (1944).

**17.** *See Sansone v. United States,* 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965).

**18.** When a statute, and by extension an ordinance, is ambiguous the legislative intent, in light of the general purpose and object of the legislative act, controls judicial construction thereof. *Oglesby v. Liberty Mut. Ins. Co.,* 832 P.2d 834 (Okla.1992); *TXO Production v. Oklahoma Corp. Commission,* 829 P.2d 964 (Okla.1992).

a provision of the Illinois Constitution specifically addressing government employee pensions allowed such pensions to be reduced or divested. *Id.* 11 Ill.Dec. at 514, 368 N.E.2d at 1122. The intermediate court concluded that the Illinois Constitution allowed government pensions to be reduced or divested when it said: "It is thus apparent that the framers recognized circumstances under which a pension might be reduced, and by extension of reasoning, divested altogether." *Id.* This same constitutional provision [19] was interpreted in *Kerner* II, where the Illinois Supreme Court explained that under the constitutional provision membership in the retirement system created an enforceable contractual relationship and the forfeiture statute was part of that constitutionally created and enforceable contract.

The *Kerner* II decision on the pension benefit makes sense when one realizes that the employee forfeiture statute was incorporated within a state constitutional provision creating the pension plan. In other words, the forfeiture statute was elevated to constitutional force and effect by the court construing the statute as a part of the constitutional provision creating the pension plan. The decision also makes sense in the context of the decision of the lower *Kerner* I court, that a governmental pension plan created under the constitutional provision could be changed or divested after vesting.

Oklahoma does not have a comparable constitutional provision specifically creating governmental pension plans for municipal employees which could incorporate a municipal employee forfeiture ordinance and give such the force and effect of a provision of our State Constitution. Neither does Oklahoma possess such a constitutional provision allowing for the divesting of pension plans.

## CONCLUSION

The Oklahoma Constitution at Art. 2 § 15 prohibits a criminal conviction from working a forfeiture of estate. The employee here retired and began receiving

**19.** Ill. Const.1970, art. XIII, sec. 5.

pension benefits due under the pension ordinances. Article 2 § 15 contains no exception for the forfeiture of a municipal pension plan by the conviction of a municipal employee.

Under the majority's theory that the benefits never vested, then those payments received by the employee were not his property, even though he had not yet been convicted of a crime and he had met all requirements for receiving the payments. I cannot accept that. This case clearly reveals the use of a conviction of a crime to forfeit a vested estate in property. Absent any articulated and relevant neutral principle of law for divesting this man's pension benefit, I cannot join in doing so.

In sum, the majority opinion is contrary to two hundred years of forfeiture jurisprudence, uses a non-applicable opinion from a foreign jurisdiction to resolve a dispute under Oklahoma's Constitution, and divests a vested pension benefit on the basis of a conviction, contrary to the Oklahoma Constitution, Art. 2 § 15.

I am authorized to state that V.C.J. HODGES joins in these views.