Bennie TAYLOR, Calvin Monroe, Mel Yates, and Wetona Hamilton, Appellants,

v.

The STATE AND EDUCATION EMPLOYEES GROUP INSURANCE PROGRAM; The State and Education Employees Group Insurance Board; Teachers Retirement System of Oklahoma; Tommy C. Beavers, Sue Peterson, Randy Kopsa, Jo Witt, and Joe Ezzell, Executive Financial Officers of the Teachers' Retirement System of Oklahoma; Claudette Henry, State Treasurer; Jack E. White, Director of State Finance; and Sandy Garrett, State Superintendent of Public Education; Appellees.

No. 82609.

Supreme Court of Oklahoma.

May 23, 1995.

E. Terrill Corley, Thomas F. Ganem, and Douglas A. Wilson, Corley & Ganem, Tulsa, for appellants.

Susan Brimer Loving, Atty. Gen., and Yasodhara Mohanty and Barry K. Koonce, Asst. Attys. Gen., Oklahoma City, for appellees.

John Morris Williams, Oklahoma City, for amicus curiae, Oklahoma Educ. Ass'n and Oklahoma Retired Educators Ass'n.

WATT, Justice.

In 1988, the Oklahoma Legislature passed the State and Education Employees Group Insurance Act, House Bill 1731, 1988 Okla. Sess.Laws Ch. 165, §§ 1 et seq. Education employees were made eligible to participate in the State Employees Group Insurance Plan. The Act required school districts to provide a health insurance plan for their employees. Prior to the Act's passage, school districts had no such obligation. Those school boards who failed to obtain health insurance by June 30, 1991, would be automatically enrolled in the new plan. Coverage for active and retired education employees began October 1, 1988. *Id.* §§ 8(1), 1.A, 1.C, and 18(1).

School boards could obtain other insurance in lieu of coverage under the Act. Such other insurance had to be "comparable," as determined by the Office of Public Affairs, to the coverage provided under the Act. Those school boards deciding to obtain health insurance other than under the Act were required to hold an election within thirty days after thirty percent of a district's employees re-

quest one. By majority vote a district's employees could then decide whether their health insurance would be provided by the Act or by the alternative selected by their school board.

Plaintiffs are Appellants here. They are employees of various Oklahoma school districts. The Oklahoma State School Boards Association was originally a plaintiff too, but later agreed to Defendants' motion to dismiss it from the case. Defendants say, and Plaintiffs do not deny, that the Oklahoma State School Boards Association owns a self-insured group health plan that competes with the State's Plan. The remaining Plaintiffs are apparently members of the Oklahoma State School Boards Association's group health plan. Defendants are Appellees here. They are the State officials responsible for the administration of the Act.

Because education employees became eligible for insurance coverage under the Act, the number of employees covered under the State Plan increased from 57,800 to 113,461. Recognizing that the passage of the Act would greatly increase the number of employees covered by the State Plan, the Act called for additional cash reserves to insure the liquidity of the Plan. Under § 29 of the Act $39,600,000 was transferred from the Teachers Retirement System of Oklahoma to the Education Employees Group Insurance Reserve Fund. This transfer was made in twelve equal installments of $3,300,000 each between June 1988 and May 1989. Section 28 of the Act increased the amount of revenues payable from the gross production tax on natural gas to the Oklahoma Teachers'

1. Section 29 is enabling legislation. As a consequence it is not codified in the Oklahoma Statutes.

2. Art V. § 62 Okla. Const. provides:
   The Legislature may enact laws to provide for the retirement for meritorious service of teachers and other employees in the public schools, colleges and universities in this State supported wholly or in part by public funds, and may provide for payments to be made and accumulated from public funds, either of the State or of the several school districts. Payments from public funds shall be made in conformity to equality and uniformity within the same classifications according to duration of service and remuneration received during such service.

Retirement System from $125,000,000 to $175,000,000.

## ISSUES

I. Is § 29 of the State and Education Employees Group Insurance Act unconstitutional under either Art. V. § 62, or Art. V. § 51, and Art. X §§ 14 and 15 of the Oklahoma Constitution? [1,2]

II. Does § 29 of the Act impair the obligation of contracts in violation of the United States and Oklahoma Constitutions, U.S.C. Const. Art. I. § 10, Okla. Const. Art. 2 § 15?

### I.

*A. Section 29 of the Act does not Violate Art. V. §§ 51 and 62, or Art. X. §§ 14 and 15, of the Oklahoma Constitution.*

In this first impression matter, Plaintiffs claim that the Legislature's mandate to transfer the $39,600,000 violated Art. V. §§ 51 and 62, and Art. X. §§ 14 and 15, of the Oklahoma Constitution. We hold that the transfer satisfied constitutional requirements.

### *The Standard of Review*

■ Legislation is strongly presumed to be constitutional. A reviewing court must uphold a statute "unless it is clearly, palpably and plainly inconsistent with fundamental law." *Childs v. State ex rel. Oklahoma State University,* 848 P.2d 571, 576 (Okla.1993), certiorari denied, —— U.S. ——, 114 S.Ct. 92, 126 L.Ed.2d 60 (1993).

Art. V. § 51 provides:
The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State.
Art. X. § 14 Okla. Const. provides in material part:
Taxes shall be levied and collected by general laws, and for public purposes only....
Art. X. § 15 Okla. Const. provides in material part:
The credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State....

### The Act does not Violate Okla. Const. Art. V. § 62

Plaintiffs claim that § 29 of the Act violates the final sentence of Art. V. § 62 of the Oklahoma Constitution. That sentence states:

Payments from public funds shall be made in conformity to equality and uniformity within the same classifications according to duration of service and remuneration received during such service.

Plaintiffs urge that the $39,600,000 transfer violated § 62 because the transfer of the funds was not an equal and uniform disbursement within classifications. We cannot accept Plaintiffs' contention that the transfer violated § 62. The term "payments," as used in Art. V. § 62 clearly means payment of retirement benefits to education employees. Thus, a statute transferring public moneys from one legislatively created fund to another has nothing to do with equality and uniformity of "payments from public funds ... according to duration of service and remuneration." *Id.*

### The Act does not Violate Okla. Const. Art. V. § 51 or Art. X. §§ 14 and 15

Plaintiffs claim that § 29 of the Act violates Art. V. § 51 and Art. X. §§ 14 and 15, Okla. Const.[3] This claim is based on Plaintiffs' conclusion that the Legislature's decision to transfer $39,600,000 from one account to another created special rights, was a gift, or spent public funds for private purposes. Plaintiffs' conclusion is not warranted.

The fund created by the $39,600,000 was neither given away nor spent. The Plan receives premiums that are paid one-third by the education entity and two-thirds by or on behalf of the employee. Section 13 of the Act authorized the State and Education Employees Group Insurance Board to invest its reserves in government securities and bank certificates of deposit. Investment income was to be deposited in the reserve fund. Section 12 of the Act provided that the fund created with the $39,600,000 was to be used "for operational expenses" of the Plan, and was a *"revolving"* and *"continuing"* one.

[Emphasis added.] Thus, the reserve fund was constantly replenished. The transfer did not create a special right. It was not a gift, nor was it spent for private purposes. The transfer satisfied the requirements of Okla. Const. Art. V. § 51 and Art. X. §§ 14 and 15.

### II.

The $39,600,000 transferred by § 29 of the Act were pension funds created by statute and paid into the Oklahoma Teachers' Retirement System for teachers' retirement. Those funds "were in the nature of trust funds, and the payments made from those funds constituted a part of the compensation ... for services previously rendered to the public." *Baker v. Oklahoma Firefighters Pension and Retirement System,* 718 P.2d 348, 351 (Okla.1986). All Plaintiffs have, or soon will have, vested pension rights in the OTRS. Both the United States and Oklahoma constitutions prohibit the state from enacting any law "impairing the obligation of contracts." U.S.C. Const. Art. I. § 10, Okla. Const. Art. 2 § 15. This raises the question of whether § 29 changed Plaintiffs' contract rights in those retirement funds to such an extent that the Legislature violated Plaintiffs' constitutional rights. This is a question of first impression in Oklahoma.

Many other jurisdictions have considered this question, or questions similar to it. See Anno. 52 A.L.R.2d 427 (1952). The courts have used varying analyses. For example, one court concluded that at least five approaches have been taken. *Simpson v. North Carolina Government Employees Retirement System,* 88 N.C.App. 218, 221, 363 S.E.2d 90, 92–93 (1987), *Aff'd.* 323 N.C. 362, 372 S.E.2d 559 (N.C.1988). Some courts have taken the view that public employees' pensions are mere gratuities and unenforceable, a view that we reject, and a majority of courts have now abandoned the gratuity theory and have done more to protect pension rights under varying theories. *Id.*

### A. The Majority Rule.

Public employees' retirement funds are trust funds under Oklahoma, California,

---

**3.** See Note 2 for the text of the relevant portions of these Constitutional provisions.

West Virginia, and Kansas law. *Baker; Valdes v. Cory,* 139 Cal.App.3d 773, 782, 189 Cal.Rptr. 212, 220 (1983); *Dadisman v. Moore,* 181 W.Va. 779, 384 S.E.2d 816 (1988); *Singer v. City of Topeka,* 227 Kan. 356, 607 P.2d 467 (1980). Many other states, on a variety of theories, have recognized that the courts are empowered to protect retirement funds in a proper case. See for example, *Simpson v. North Carolina Local Government Employees Retirement System,* 88 N.C.App. 218, 363 S.E.2d 90 (1987). We hold, as do a majority of jurisdictions, that while public employees' pension rights are contractually based, and are trust funds, the legislature may modify them if modification is necessary and reasonable, and any disadvantages employees suffer through the changes are offset by new advantages. "Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change." *Betts v. Board of Administration,* 21 Cal.3d 859, 864, 148 Cal.Rptr. 158, 582 P.2d 614 (1978) citing *Allen v. City of Long Beach,* 45 Cal.2d 128, 287 P.2d 765 (1955). We choose to add another factor to the Oklahoma rule: Such modifications, in addition to being necessary, reasonable, and providing offsetting advantages to any disadvantages, will be approved only if they do not impair the actuarial soundness of the fund, or detrimentally affect vested rights, which are matters of proof.

■ Clearly, those Plaintiffs whose retirement benefits are vested have contract rights under OTRS. *Baker,* 718 P.2d at 353. But this holding does not dispose of the question because impairing Plaintiffs' pension rights to some extent does not necessarily violate the contract clause. The U.S. Supreme Court requires the satisfaction of three factors before the contract clause can be said to have been violated. The reviewing court must find that (1) the contractual obligation at issue arose under statute, (2) the state's actions impaired an obligation of that contract, and (3) the impairment was not "reasonable and necessary to serve an important public purpose." *United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). A useful discussion of the contract clause issue in the context of teachers' retirement benefits is contained in *Maryland State Teachers Assoc. Inc. v. Hughes,* 594 F.Supp. 1353 (D.Md.1984). In *Hughes* the court held that a change in the Maryland teachers retirement plan was appropriate because the changes in benefits were prospective only, and were necessary to preserve the fiscal integrity of the system.

■ Although we adopt the majority rule as we have modified it, for the reasons set out below, we find that the legislative changes satisfy the Oklahoma rule. Nevertheless, we believe the rule is a valuable tool to protect public employees' retirement benefits.[4] Two cases serve as good examples of fact situations calling for the application of the rule.

In *Valdes v. Cory,* 139 Cal.App.3d 773, 189 Cal.Rptr. 212 (1983), the California Court of Appeals, relying on the California version of the majority rule, struck down an act of the California Legislature. The California Legislature had directed suspension of state payments into public employees' retirement plans, without making offsetting changes that would benefit retirees. Because the legislation unreasonably impaired public employees' contract rights the court struck it down.

In *Dadisman v. Moore,* 181 W.Va. 779, 384 S.E.2d 816 (1988) the West Virginia Legislature had transferred moneys to the state's general fund that the West Virginia public employees' retirement statutes required to be maintained in a retirement plan fund. This process went on for four fiscal years, resulting in an underfunding of the state's retirement plan of eighty-million dollars. Some of the diverted money was used to pave roads. The West Virginia court, applying the majority rule understandably declared such activity unconstitutional and required that the retirement plan's trustees develop a fund to keep the plan actuarily

---

4. Maintaining a stable and reliable teachers' retirement system is a fundamental part of the Legislature's obligation under the constitution. Okla. Const. Art. XIII. § 1 provides, "The Legis- lature shall establish and maintain a system of free public schools wherein all the children of the State may be educated."

sound. The court also overturned a portion of the legislation that called for monthly transfers from retirement plan funds, apparently in perpetuity, to pay premiums for extended health insurance. The State Treasurer, although he had been named as a defendant, joined with plaintiffs in asking that this portion of the legislation be overturned. The State Auditor said that he had no objection to this part of the legislation being overturned.

### B. The Oklahoma rule is satisfied under the facts of this case.

■ We find that the Oklahoma rule has been satisfied here. Nonetheless, we would not hesitate to find that its terms had been violated in a situation where the actuarial soundness of the fund were threatened, and contract rights of retired public employees and those eligible for retirement, were unreasonably impaired.

When the Oklahoma Legislature required school districts to provide health insurance, tens of thousands of their employees decided to participate in the State Plan. The decision by education employees to participate in the State Plan nearly doubled the Plan's size. The Legislature had to provide additional cash reserves for the Plan because it foresaw that large numbers of education employees would join. Thus, its decision to fund those reserves from funds it had established for education employees was logical and fair. It was not arbitrary.

Plaintiffs imply that the transfer of the $39,600,000 somehow prejudiced them. It did not. The Legislature neither increased teacher contributions to OTRS nor reduced benefits. The Act guaranteed, for the first time, that school district employees would have health insurance plans. The potential revenues from the gross production tax on natural gas payable to OTRS was increased from $125,000,000 to $175,000,000 per year. It is thus clear that Plaintiffs' retirement benefits were neither reduced nor threatened by the transfers. Plaintiffs and others covered by OTRS received a reasonable *quid pro quo* under the Act. The actuarial soundness of the OTRS was not impaired. We hold, therefore, that the changes mandated by the Act were "reasonable and necessary." *Betts, Allen.*

### CONCLUSION

The Act violates neither the United States nor the Oklahoma Constitution. The trial court properly granted Defendants' motion for summary judgment.

DISTRICT COURT JUDGMENT AFFIRMED.

ALMA WILSON, C.J., and HODGES, SIMMS, OPALA and SUMMERS, JJ., concur.

KAUGER, V.C.J., and LAVENDER and HARGRAVE, JJ., concur in result.