Dear House of Representatives Roberts,
¶ 0 This office has received your letter asking for an official Opinion addressing, in effect, the following questions:
1. What is the proper interpretation of the phrase "the thenexisting rights" of a member contained in 74 O.S.Supp. 1995, §923(A) with respect to the ability of the Legislature to modifycomponents of the retirement benefits of the Oklahoma PublicEmployees Retirement System insofar as any particular member isconcerned?
 2. a. Does 74 O.S.Supp. 1995, § 923(A) affirmativelyestablish that members of the Oklahoma Public EmployeesRetirement System obtain a legally enforceable right toretirement benefits based upon the statutory scheme for definingthose benefits irrespective of the date a person either:
 i. acquires the ability to elect a vested benefit; or
 ii. elects to receive a vested benefit?
 b. Does 74 O.S.Supp. 1995, § 923(A) prohibit theLegislature from making modifications to the structure ofretirement benefits for members of the Oklahoma Public EmployeesRetirement System subsequent to the date a member completes eight(8) years of service with a participating employer of theSystem?
 c. Because 74 O.S.Supp. 1995, § 917[74-917] provides for membersof the Oklahoma Public Employees Retirement System to make anelection after having completed at least (8) years of service(and terminating employment) to receive a vested retirement inlieu of receiving accumulated employee contributions, does 74O.S.Supp. 1995, § 923[74-923] indicate that the Legislature would havethe ability to modify the structure of the System's benefits atany time prior to the date a member elected to receive a vestedbenefit and not violate "the then existing rights" of the memberas provided in Section 923(A)?
 3. Assuming that 74 O.S.Supp. 1995, § 923(A) would notprohibit the Legislature from modifying the retirement benefitstructure for members of the Oklahoma Public Employees RetirementSystem who had not either acquired eight (8) years of service orwho had acquired at least eight (8) years of service and had notelected a vested benefit, at what point in time or upon theoccurrence of what event would the Legislature beconstitutionally prohibited from modifying the System'sretirement benefit structure for a particular member?
 4. Does 74 O.S.Supp. 1995, § 923(A) actually create rightsfor members of the Oklahoma Public Employees Retirement System toa particular defined retirement "formula" or does it merelyenunciate a principle that whatever rights are protected may notbe diminished or removed?
 5. Would an amendment to 74 O.S.Supp. 1995, § 923(A) whichwould eliminate the reference to "the then existing rights ofmembers and beneficiaries" be permissible, based upon currentOklahoma jurisprudence, without adversely affecting a right whichis constitutionally protected?
 I. INTRODUCTION
¶ 1 Your questions all concern the nature and extent of public pension benefit rights as acquired by members of the Oklahoma Public Employees Retirement System ("OPERS" or "the System") in the specific context of the Oklahoma Public Employees Retirement System Act ("Act"), 74 O.S. 1991 and Supp. 1995, §§ 901-943,
and the Oklahoma Legislature's ability to modify retirement benefit rights within the Act in light of the specific provisions of 74 O.S.Supp. 1995, § 923[74-923](A).
¶ 2 It should first be noted that the retirement plan contained within the OPERS statutes is commonly known as a "defined benefit plan." A defined benefit plan is "one that promises to pay a specified amount to each [member] who retires after a set number of years of service." Pulliam v. Pulliam, 796 P.2d 623, 624
(Okla. 1990). The plan is partially funded by obligatory deductions from the employee's salary, which, when coupled with an employer's contributions, are combined to yield an annuity which will be paid upon retirement. The annuity amount is based upon the specifications in the retirement plan which include, but are not limited to, the employee's average pay, age and years of service. See Pulliam, 796 P.2d at 624.
¶ 3 Your first question asks that this office construe the statutory phrase "the then existing rights" as contained in 74O.S.Supp. 1995, § 923[74-923](A) of the OPERS defined benefit plan with respect to the ability of the Oklahoma Legislature to modify the components of the statutory benefit scheme/formulas for members of OPERS.
¶ 4 Title 74 O.S.Supp. 1995, § 923[74-923](A) of the Act provides in pertinent part:
 Except as otherwise provided by this section, no alteration, amendment, or repeal of this act shall affect the then existing rights of members and beneficiaries, but shall be effective only as to rights which would otherwise accrue hereunder as a result of services rendered by an employee after such alteration, amendment or repeal.
74 O.S.Supp. 1995, § 923[74-923](A) (emphasis added).
¶ 5 A review of the history of the Act reveals that the pertinent language in Section 923(A) was enacted by the Oklahoma Legislature in 1963 as part of the OPERS establishment/enabling legislation and has never been amended. See 1963 Okla. Sess. Laws, ch. 50, § 23. Standing alone, Section 923(A) does not "create" any particular pension rights. The language found within Section 923(A) simply provides that the Legislature shall not alter, amend or repeal any of the Act's provisions which affect "the then existing rights" of OPERS members and beneficiaries.[1] However, through this language, the Legislature imposed upon itself a statutory restriction which limits the Legislature's ability to affect pension rights that not only inure to retired OPERS members, but also to currentin-service members who have yet to become eligible for retirement. As more fully discussed below, after examination of Oklahoma statutory and decisional public pension law, we conclude that the law recognizes three separate categories of public pension rights:
1. "Absolute" rights;
2. "Service Vested" rights; and
3. "Contractually Based" rights.
¶ 6 This opinion will examine 74 O.S.Supp. 1995, § 923[74-923](A)'s effect on these three categories of pension rights.
 PUBLIC PENSION RIGHTS IN OKLAHOMA "Absolute" Rights
¶ 7 Over the past decade, the Oklahoma Supreme Court has considered several cases in which various legal claims or constitutional challenges have been made by public employees against their public retirement systems. Through the Court's recent decisions, a workable framework has evolved in which public pension rights in Oklahoma can be legally identified and categorized. Specifically, we believe that there are three pivotal cases which have defined the nature of public pension rights in Oklahoma, all of which must be examined and understood in order to address your inquiries.
¶ 8 The first of these cases is Baker v. Oklahoma FirefightersPension and Retirement System, 718 P.2d 348 (Okla. 1986). InBaker, the Oklahoma Supreme Court reviewed a legislative bill which effectively repealed certain pension rights of various classes of members of the Oklahoma Firefighters Pension and Retirement System and the Oklahoma Police Pension and Retirement System. Analyzing the enactment in light of the Oklahoma Constitution at Article II, § 15 (contract clause)[2] and Article V, § 54 (vested rights clause),[3] the Court concluded that:
 Our review of cases dealing with the questions here presented require a conclusion that, under Oklahoma law, the right to a pension would vest, or become absolute, upon the pension recipient's becoming eligible for payment of the pension.
Baker, 718 P.2d at 350-51 (emphasis added).
¶ 9 Referencing its prior decisions regarding the subject, the Oklahoma Supreme Court further stated that:
 [T]he right of a claimant to a pension is controlled by the terms of the statute in effect when the right to a pension vests and [our prior cases] have implied that that vesting occurs as of the date of retirement.
Baker, 718 P.2d at 351 (prior cases, Board of Trustees v.Burns, 348 P.2d 1067 (Okla. 1959); Board of Trustees v.Naughton, 173 P.2d 425 (Okla. 1946)) (emphasis added).
¶ 10 The Baker Court examined and rejected the views of several other jurisdictions regarding the "vesting" of pension benefits rights. The Court found that the views from other states varied both as to the perceived nature of the relationship between the state and its employees regarding pension rights as well as the particular events or circumstances from which the relationship matures into vested rights. Baker,718 P.2d at 351. Specifically, the Court found that:
 Some jurisdictions have expressed the view that the relationship is contractual in nature and that the contract regarding retirement comes into existence and provides protectible interests at the time of employment.[4] Others, while espousing the contractual nature of the employment, take the view that the protectible interests vest at some time after employment but prior to reaching eligibility to receive benefits.[5] Yet other jurisdictions, to avoid the perceived illogic of characterizing such rights as contractual while still holding them to be subject to modification, have characterized the rights to pension benefits themselves as statutory in nature rather than contractual.
Baker, 718 P.2d at 351-52.
¶ 11 In rejecting these other views, the Supreme Court found that the best resolution to the question of "when rights under aretirement pension plan come into existence" was "inherent in our own previous case law." Baker, 718 P.2d at 352 (emphasis added). The Court then recited with approval, the analysis from the Delaware Supreme Court opinion of Petras v. State Board ofTrustees, 464 A.2d 894, 896 (Del. 1983), stating that "[Delaware's] case law . . . is closely parallel to the reasoning in our own [case law]." Baker, 718 P.2d at 352. In Petras,
the Delaware Supreme Court observed:
 In State Employees' Pension Plan this Court ruled that vested contractual rights were held by those employees and former employees who satisfied the eligibility requirements for a pension, i.e., a pension contract exists when the pension is vested. Although the Court did not consider whether contractual rights inured to employees, whose pensions had not yet vested, this issue was resolved in Grant v. Nellius, Del.Supr., 377 A.2d 354
(1977). That decision . . . described State Employees' Pension Plan as being based on the premise that those who participate in a pension plan acquire contractual rights upon fulfillment of the eligibility requirements. See also, State ex rel. State Board of Pension Trustees v. Dineen, Del.Ch., 409 A.2d 1256, 1259 (1979) (pension vests upon completion of minimum period of credited service). . . . The import of these cases is that pension rights may be changed at any time before they become vested.
Baker, 718 P.2d at 352 (citing Petras) (citations omitted) (emphasis added).
¶ 12 In explaining the rationale underlying the Oklahoma view on the creation and existence of public pension rights, theBaker Court further quoted Petras:
 Thus, it is clear that no contract exists between an employee and the State, concerning the state pension plan, unless and until the pension vests. . . . See, e.g., Police Pension and Relief Board v. McPhail, 139 Colo. 330, 338 P.2d 694 (1959); . . . Hickey v. Pension Board, 378 Pa. 300, 106 A.2d 233 (1954).
Baker, 718 P.2d at 352 (citing Petras) (citations omitted) (emphasis added).
¶ 13 The Baker Court further stated:
 Viewing the contract between the state and its employees as coming into existence at the point of eligibility allows the necessary flexibility in fiscal planning which must be given the Legislature.
This view also avoids the necessity of engaging in the tortuous applications of contract law which other jurisdictions have applied in finding that rights, which they have characterized as being in existence, remain subject to unilateral modifications. This view also realistically acknowledges the contingent nature of the relationship as it ripens into a contractual obligation on the part of the state.
Baker, 718 P.2d at 352 (emphasis added).
¶ 14 In reading Baker, we must remember that while the Oklahoma Supreme Court at times spoke in general terms, both the issues addressed and the Court's conclusion dealt with two specific State pension systems — the Oklahoma Firefighters Pension and Retirement System and the Oklahoma Police Pension and Retirement System — and not any of the other State retirement systems. The Court's conclusion makes this clear:
 [T]he right to the retirement pension benefits provided to firefighters and police officers under our state statutory schemes becomes absolute at the time those benefits become payable to those eligible. . . .
 [T]he rights of those classes [of firefighters and police officers] did not become absolute and susceptible to the protections of Art. II § 15 and Art. V § 54 of the Oklahoma Constitution prior to [eligibility for payment of pension benefits].
Baker, 718 P.2d at 353 (emphasis added).
¶ 15 It is also important to bear in mind that at the time thatBaker was decided, both the Oklahoma Firefighters Pension and Retirement System and the Oklahoma Police Pension and Retirement System's statutory schemes provided for a minimum credited service period of twenty years before a member could acquire or "vest" for retirement benefits. Upon the completion of the twenty year period, a firefighter or police member could effectively retire with full benefits.[6]
¶ 16 The statutory formats for the firefighters and police are substantially different from the scheme found in the OPERS statutes. As we will discuss, under the Act, a State employee has historically been able to acquire a "vested" right to some amount of retirement benefits after the completion of eight years of credited service without regard to the actual date of retirement.See 74 O.S.Supp. 1995, § 917[74-917](2).
¶ 17 Since its decision in Baker, the Oklahoma Supreme Court has applied the principles regarding public pension rights announced in Baker to other public retirement systems within the State. For example, in Woods v. City of Lawton,845 P.2d 880 (Okla. 1992), the Court applied a similar analysis regarding the "vesting" of public pension rights in a case which did not involve the State police or firefighter retirement systems, thus suggesting that its pronouncement in Baker had a broader application.
¶ 18 In Woods, the Oklahoma Supreme Court was asked to determine whether a municipality could divest a former employee of his pension rights upon that employee's post-retirement conviction for acts of embezzlement which occurred prior to retirement. In its analysis, the Court initially looked toBaker in determining whether the plaintiff's rights were absolute and provided:
 A `vested right' is the power to do certain actions or possess certain things lawfully, and is substantially a property right, and may be created either by common law, by statute, or by contract. . . .
. . . .
 [U]nder Oklahoma law, the right to a pension would vest, or become absolute, upon the pension recipient's becoming eligible for payment of the pension. . . . We have also stated that the right of a claimant to a pension is controlled by the terms of the statute in effect when the right to a pension vests and have implied that vesting occurs as of the date of retirement.
. . . .
 [I]t is apparent that the view of pension benefit rights taken in this jurisdiction has been that such rights neither vest nor accrue until the contract between the state and the beneficiary comes in existence.
Woods, 845 P.2d at 882 (quoting Baker, 718 P.2d at 350-51) (emphasis added).
¶ 19 The Oklahoma Supreme Court rejected the plaintiff's claim that because he became "eligible" for retirement benefits and thus, "vested," before he committed the felonious acts, the City of Lawton could not constitutionally divest him of his benefit rights, even upon conviction. Instead, the Court held thatBaker was not dispositive of the pending issue, and instead, placed great reliance on the specific provisions of the City of Lawton's retirement ordinance which provided for the forfeiture of such rights if a member "is found guilty . . . of committing . . . any embezzlement . . . prior to the retirement." Woods,845 P.2d at 881. In holding that the plaintiff had breached the contractual terms of the municipal retirement ordinance, the Court stated:
 [Woods'] pension did not vest because the ordinance in effect precluded vesting if Woods committed certain offenses prior to retirement which in fact did occur.
 The rights of a government employee are defined by the limits of the contract.
Woods, 845 P.2d at 883 (emphasis added).
¶ 20 Woods is notable for the reason that the Court indicates for the first time that the provisions comprising a public retirement plan constitute an employment contract[7] and can alter the circumstances under which its members acquire vested or absolute rights.
 "Service Vested" Rights
¶ 21 As we alluded to earlier, upon examination of the Court's analysis and holdings in Baker and Woods, it is clear that in Oklahoma, a "vested" right may also be held by public employees and former employees who fulfill certain other eligibility requirements, such as completion of a minimum period of service, if it is provided for in the statutory retirement plan, unless the provisions of the applicable retirement plan preclude the event. Woods, 845 P.2d at 883; see also Baker,718 P.2d at 352 (Petras, 464 A.2d at 896 citing Dineen,409 A.2d at 1259).
¶ 22 Minimum service statutes describe what can be referred to as an express "provision in a retirement plan whereby the member's right to a benefit becomes effective upon fulfillment of specified qualifying conditions, such as service for a certain period of time, which right is not forfeited by separation from service prior to the prescribed age for retirement." Kraus v.Board of Trustees, 390 N.E.2d 1281, 1284 (Ill.App.Ct. 1979). These statutorily created "service vested" rights[8] under the Act, while accrued and resounding in contract, cannot fully ripen under Baker, and are by no means absolute at the point acquired.[9]
¶ 23 Pertinent examples of service vested rights can be found in Sections 917 and 912.1 of the Act. Section 917 expressly provides the statutory mechanism by which OPERS members acquire a "service vested" benefit after eight years of service. Section 917 provides in pertinent part:
 1. Upon termination of employment with a participating employer . . . the member shall be paid an amount equal to the amount of money he or she has paid into the System. . . .
 2. If such member has completed eight (8) years of credited service at date of termination . . . he may elect a vested benefit in lieu of receiving his accumulated contributions. The amount of the vested benefit shall commence at the normal retirement date
and shall be paid monthly during the lifetime of the retirant with the last payment made on the last day of the month in which death occurs.
74 O.S.Supp. 1995, § 917[74-917] (emphasis added).
¶ 24 Until OPERS members complete eight years of credited service with the System, they do not acquire a vested right to a State pension. However, upon completion of the eight year service eligibility period, OPERS members acquire fixed and non-forfeitable rights to elect a pension or receive their contributions in lieu of pension benefits upon leaving State employment. At the time members acquire the right to make an election under Section 917, the amount of the future retirement benefit cannot be readily determined.[10] However, pursuant to the plain language of the OPERS statutes, that future benefit will be limited to the extent that members can only use the applicable percent factor of final average compensation which is in effect in the retirement benefit formula at the time they terminate employment. 74 O.S.Supp. 1995, § 915[74-915](A)(1)(e).
¶ 25 Thus, by virtue of the express provisions of the present OPERS statutory scheme, it is clear that the service and election option listed in Section 917 creates a "service vested" benefit which can be acquired well in advance of the date that OPERS members become eligible for receiving retirement benefits. Similarly, the conditional factual events listed in 74 O.S.1991, § 912.1[74-912.1] also lead to the acquisition of service-related "vested" rights by active or retired OPERS members in circumstances which could transpire prior to, or even subsequent to, members becoming eligible to retire.[11] It is obvious that by the use of the term "vesting" in these sections, the Legislature intended to afford OPERS members certain fixed and protectible rights to the benefits existing under the current statutory scheme upon completion of the applicable service requirements.
 "Contractually Based" Rights
¶ 26 In the more recent case of Taylor v. State and EducationEmployees Group Insurance Program, 897 P.2d 275 (Okla. 1995), the Oklahoma Supreme Court reviewed a challenged legislative enactment which established health insurance benefits and reserves for members of the Oklahoma Teachers' Retirement System ("OTRS"). The plaintiffs in Taylor were current "employees of various Oklahoma school districts . . . [who] have, or soon willhave, vested pension rights in the OTRS." Id. at 277-78 (emphasis added). It is important to remember that the rights addressed in Taylor included rights of current, active education employees who had not retired.
¶ 27 In its holding, the Court provided that in Oklahoma, public employees' pension rights are "contractually based" and announced that Oklahoma followed the "majority rule" regarding the Legislature's ability to modify employees rights:
 [W]hile public employees' pension rights are contractually based, and are trust funds, the legislature may modify them if modification is necessary and reasonable, and any disadvantages employees suffer through the changes are offset by new advantages . . ." it is for the courts to determine upon the facts of each case what constitutes a permissible change."
Taylor, 897 P.2d at 279 (citing two California cases, Betts v.Board of Administration, 582 P.2d 614 (Cal. 1978) citing Allenv. City of Long Beach, 287 P.2d 765 (Cal. 1955)) (emphasis added).
¶ 28 The Taylor Court added an additional factor to the "majority rule" to create the "Oklahoma rule":
 Such modifications, in addition to being necessary, reasonable, and providing offsetting advantages to any disadvantages, will be approved only if they do not impair the actuarial soundness of the fund, or detrimentally affect vested rights, which are matters of proof.
Taylor, 897 P.2d at 279.
¶ 29 The Taylor Court recognized that "those Plaintiffs whose retirement benefits are vested have contract rights under OTRS."Taylor, 897 P.2d at 279 (citing Baker, 718 P.2d at 353). Moreover, the Court also found that modifications to the vested pension rights of state employees did not necessarily violate the contract clause of the United States Constitution.[12]Id.
¶ 30 We conclude that in Taylor, the Oklahoma Supreme Court, in adopting the "majority" and "Oklahoma" rules, recognized a fundamental difference between on the one hand, an employee's "contractually based" pre-retirement rights, and on the other hand, vested rights, which include both the "absolute" rights of a retiree and the "service vested" rights of a current employee. In embracing the "majority rule," the Court discerned that current public employees, who have yet to acquire fixed rights (i.e., fulfillment of eligibility requirements — such as OPERS' eight year minimum service requirement), and thus do not possess any form of vested rights, nonetheless possess "contractually based" rights to receive a pension.
¶ 31 In adopting the "majority rule," the Court relied upon the California Supreme Court's decision in Betts v. Board ofAdministration,[13] wherein in describing the rights which inure to public employees upon acceptance of employment, the California court stated:
 [A public] employee does not obtain, prior to retirement, any absolute right to fixed or specific benefits, but only to a "substantial or reasonable pension."
Betts, 582 P.2d at 617 (emphasis added).
¶ 32 One jurisdiction recently referred to these pre-retirement, contractually based rights as "implied rights," the purpose of which is to try to "fine tune" or "achieve a balance" between the competing interests of state employees' rights and the right of the state in managing its pension system.National Education Association-Rhode Island v. Retirement Boardof Rhode Island Employees' Retirement System, 890 F. Supp. 1143,1154-55 (D.R.I. 1995). So holding, the Rhode Island federal court cited Betts' predecessor, Allen v. City of Long Beach, supra,
and the "majority rule" and stating:
 Clearly, an employee has an expectation of receiving a pension and makes many of life's decisions based on the security of receiving a pension. The right to receive a pension should, therefore, be protected.
It is equally clear, however, that a state may, from time to time, incur significant financial obligations, and a pension system's fiscal integrity may well be at stake. The state, therefore, may seek to rearrange its obligations to avoid the pension system's collapse.
 The implied rights model recognizes these two valid concerns. On one hand, a state legislature should be allowed to make changes to modernize the pension system without having a Contract Clause or breach of contract lawsuit filed each time it so acts. On the other hand, by recognizing the employees' rights and reasonable expectations in receiving their pensions, this model only allows reasonable legislative modifications, which are those that do not unfairly damage particular employees in order to achieve a generalized financial benefit to the system.
National Education Association-Rhode Island,890 F. Supp. at 1154-55 (emphasis added).
¶ 33 Thus, we have seen that through its recent decisional history, the Oklahoma Supreme Court presently recognizes that State employees have both constitutionally protected and contractual rights under Baker, and contractually based, yet pre-vested rights under Taylor, which can be modified by the Legislature only upon a showing of certain criteria. We find that in Oklahoma, contractually based pension rights do not includethe right to any particular benefit or pension calculationformula. Therefore, it follows that a contractually based pension right is not "modified" under the "Oklahoma rule" by legislative amendments to a public pension benefit structure unless the proposed change(s) deprive members of a substantial or reasonable pension.
¶ 34 In addition to the present restraints imposed upon the Legislature by the Supreme Court's recent creation of the "Oklahoma rule" in Taylor,[14] the Legislature imposed additional restrictions upon itself when it enacted Section 923(A) in 1963.
 THE SECTION 923(A) LIMITATION
¶ 35 By virtue of the uniquely restrictive language in 74O.S.Supp. 1995, § 923[74-923](A), the Legislature has essentially contracted[15] with current OPERS members that pension rights under the OPERS statutes will only be amended as they involve service rights which accrue sometime in the future.[16] As such, any legislative changes made to a current State employee's rights under the OPERS plan must be prospective in nature only and not impair the employee's existing rights under the OPERS statutes, rules and provisions which were in effect during the service period beginning when the employee joined the System until the time of the proposed amendments.
¶ 36 Therefore, in answer your first question, it is our Opinion that the term "the then existing rights" provided for in74 O.S.Supp. 1995, § 923[74-923](A) encompasses "absolute" and "service vested" rights as well as "contractually based" pension rights under the extant provisions of the OPERS statutes.
¶ 37 We also conclude that the express prohibition contained within Section 923(A) is more restrictive than the factors enunciated in either a contract clause analysis or the "Oklahoma rule" in that it expressly limits the effect of the Legislature's ability to make changes to the OPERS pension plan. Again, under Section 923(A), any modifications to the OPERS defined benefit plan must be prospective in nature only and not affect a State employee's existing rights under the OPERS statutes, rules and provisions which were in effect during that period of service in which the employee maintained membership in the system prior to the proposed amendatory changes.
 CONTRACT CLAUSE IMPLICATIONS
¶ 38 We do not suggest that the Legislature is absolutely barred from impairing existing State employee rights under the Act. As stated by the Oklahoma Supreme Court and recited earlier in this Opinion, the fact that the Legislature has impaired a State employee's existing contractual pension right "does not necessarily violate the contract clause." Taylor,897 P.2d at 279. Even subsequent legislative impairment of such rights may withstand constitutional scrutiny if the modifications are "reasonable and necessary to serve an important public purpose."Taylor, 897 P.2d at 279 (citing United States Trust Co. v. NewJersey).
¶ 39 "Reasonableness" is to be judged in light of whether the prior State contractual obligations or counterpart private rights "had effects that were unforeseen and unintended by the legislature" when those obligations and rights were created.United States Trust Co., 431 U.S. at 31. "Necessity" is to be judged on two levels: (1) whether a less drastic modification could have been implemented; and (2) whether, even without modification, the State could have achieved its stated goals.Id. at 29-30.
¶ 40 However, we are suggesting that under the current OPERS statutory scheme, the Legislature is legally bound by the express restrictions of Section 923(A), so that any possible future impairment of existing OPERS retirement rights cannot take place until such time as Section 923(A) is either amended or repealed.
 II.
¶ 41 In your second question you ask whether 74 O.S.Supp.1995, § 923[74-923](A) affirmatively establishes that members of OPERS obtain an enforceable right to retirement benefits based upon the statutory scheme for defining those benefits irrespective of the date that they either acquire the ability to elect a vested benefit, or actually elect a vested benefit, under 74 O.S.Supp.1995, § 917[74-917]. You also essentially ask whether Section 923(A) prohibits the Legislature from making modifications to the structure of OPERS retirement benefits prior to, or subsequent to, the date on which a member completes eight (8) years of service with a participating employer of the System.
¶ 42 Regarding the first part of your question, we have now recognized that under 74 O.S.Supp. 1995, § 917[74-917](2), OPERS members acquire "service vested" rights from the State of Oklahoma upon completion of eight years of service. This express right includes the option to elect a pension or to receive contributions in lieu of benefits upon termination of State service. The date that members actually elect the benefit is irrelevant. Before the eight year milestone is reached, OPERS members possess only "contractually based" rights to a substantial or reasonable pension.
¶ 43 As we have seen, both "service vested" and "contractually based" rights exist within the meaning of "the then existing rights" under Section 923(A). Unlike the other State retirement system schemes, wherein the Legislature is bound by the less restrictive factors listed in the "Oklahoma rule," Section 923(A) of the OPERS statutes prohibits any form of retroactive modification by the Legislature as to the existing service-related rights of current qualified members.
¶ 44 Therefore, as to the second part of your question, under Section 923(A), any modifications made by the Legislature to the OPERS benefit structure aimed at affecting members with less than eight years of service is permissible so long as the modification does not deprive the members of their "contractually based"rights to a substantial or reasonable pension.
¶ 45 Likewise, Section 923(A) expressly prohibits any legislative changes aimed at retroactively modifying the pension rights of OPERS members who have acquired "service vested" benefits upon the completion of eight years of service. Plainly stated, so long as Section 923(A) remains in its current form, any modification of the above-described pension rights under the OPERS statutes can only operate prospectively, with amendatory changes applying to future service.
 III.
¶ 46 In your third question, you essentially ask at what point in time, or upon the occurrence of what event, would the Legislature be constitutionally prohibited from modifying the retirement benefit structure for particular OPERS members.
¶ 47 It is impossible to state with any specificity the point in time or occurrence of event(s) at which the Legislature would be constitutionally prohibited from amending the OPERS benefit structure because Legislative impairment of existing OPERS members' rights may still be permissible under a contract clause factual analysis, assuming that Section 923(A) is amended or repealed. Therefore, we are unable to provide a response to your third question because a case-by-case determination is required.
 IV.
¶ 48 Your fourth question asks whether "the then existing rights" language in 74 O.S.Supp. 1995, § 923[74-923](A) creates protectible "rights" to a particular defined statutory retirement formula.
¶ 49 Based upon the foregoing analysis, the right to present pension calculation formulas, including minimum final average compensation amounts, are included within the phrase, "the then existing rights" in Section 923(A) of Title 74. However, as stated in response to your second question, any modifications made by the Legislature regarding benefits contained within a statutory retirement formula aimed at affecting OPERS members with less than eight years of service is permissible so long as the modification does not deprive the members of their "contractually based" right to a substantial or reasonable pension. Similarly, Section 923(A) does not permit any legislative changes aimed at retroactively modifying the pension calculation formulas of OPERS members who have acquired "service vested" benefits upon the completion of eight years of service.[17]
 V.
¶ 50 In your fifth question, you essentially ask whether a legislative amendment to 74 O.S. Supp. 1995, § 923[74-923](A), which would eliminate the language "the then existing rights of members and beneficiaries," would be constitutionally permissible in light of existing Oklahoma law regarding public pension rights.
¶ 51 The repeal of any portion of Section 923 by the Legislature, standing alone, would not diminish the "existing" pension rights of any current OPERS members because such rights, whether "absolute," "service vested" or "contractually based" in nature, and the underlying fundamental legal protections regarding those rights are, as discussed herein, fully provided for by extant Oklahoma constitutional and common law. Therefore, the deletion of the specific language "the then existing rights of members and beneficiaries" from Section 923(A) of Title 74 would be constitutionally permissible so long as the modification operated prospectively and affected only the future service of OPERS members.
¶ 52 To the extent that Attorney General Opinions 82-11 and 86-54 are inconsistent with this Opinion based upon their respective issuance prior to the rendering of more relevant decisional authority, each is hereby withdrawn.
¶ 53 Therefore, it is the official Opinion of the AttorneyGeneral that:
 1. The term "the then existing rights" provided for in 74O.S.Supp. 1995, § 923(A) includes:
 a. "Absolute" rights which are protected under Article II, §15 of the Oklahoma Constitution, and are acquired by members ofthe Oklahoma Public Employees Retirement System at the point theybecome eligible to retire and receive pension payments;
 b. Statutory "service vested" rights which are those expresslycreated under the statutory provisions of the Oklahoma PublicEmployees Retirement System and other public retirement systemstatutes. This form of vested rights granted by the OklahomaLegislature, while not "absolute" until members become eligiblefor retirement payments, represents a recognition that membersacquire fixed and immutable rights to certain benefits providedby the system's retirement scheme at the time members completetheir applicable service eligibility requirements — for membersof the Oklahoma Public Employees Retirement System, eight (8)years; and
 c. "Contractually based" pension rights:
 i. While not rising to the level of service vested or absoluterights, exist in the Oklahoma Public Employees Retirement Systemand other State pension system statutory schemes and consist ofmembers' rights to a substantial or reasonable pension; and
 ii. Do not include the right to any particular benefit orpension calculation formula. Therefore, a contractually basedpension right is not "modified" under the "Oklahoma rule" bylegislative amendment to a public pension benefit structureunless the proposed amendment deprives members of the right to asubstantial or reasonable pension.
 2. The "Oklahoma rule" generally requires that modificationsto absolute, service vested or contractually based rights must bereasonable and necessary. Additionally, any disadvantages membersmay suffer through the changes are to be offset by newadvantages, and the actuarial soundness of the pension systemcannot be impaired. Finally, a modification may not detrimentallyaffect the members' vested rights.
 3. Title 74 O.S.Supp. 1995, § 923(A) expressly limits theeffect of the Legislature's ability to make changes under theOklahoma Public Employees Retirement System pension plan and addsmore restrictions than the "Oklahoma rule." Under Section 923(A),any modifications to the Oklahoma Public Employees RetirementSystem statutes must be prospective in nature only and not affecta State employee's legitimate expectations and existing rightsunder the Oklahoma Public Employees Retirement System statutes,rules and provisions which were in effect during the period fromwhen the employee joined the Oklahoma Public Employees RetirementSystem until the time of the proposed legislative changes.
 4. Subsequent legislative impairment of protected rights underthe Oklahoma Public Employees Retirement System defined benefitplan may be permissible under Article II, § 15 of the OklahomaConstitution only if it is determined that:
 a. The contractual obligation at issue arose under statute;
 b. The State's actions impaired an obligation of thatcontract; and
 c. The impairment was reasonable and necessary to serve animportant public purpose. "Reasonableness" is to be judged inlight of whether the prior State contractual obligations orcounterpart private rights had effects that were unforeseen andunintended by the Legislature when those obligations and rightswere created. "Necessity" is to be judged on two levels: (1)whether a less drastic modification could have been implemented;and (2) whether, even without modification, the State could haveachieved its stated goals.
 5. Title 74 O.S.Supp. 1995, § 923(A):
 a. Affirmatively establishes that upon completing eight (8)years of credited service with the System, current members ofOklahoma Public Employees Retirement System acquirenon-forfeitable "service vested" rights to elect a pension, or toreceive contributions in lieu of pension benefits upon leavingState employment. Until members of the Oklahoma Public EmployeesRetirement System complete their eighth year of service, theypossess only "contractually based" rights to a substantial orreasonable pension.
 b. Permits legislative modifications to the Oklahoma PublicEmployees Retirement System benefit structure which affectmembers with less than eight years of service so long as thechanges do no violate the affected members' "contractually based"rights to a substantial or reasonable pension.
 c. Expressly prohibits any legislative modifications to theOklahoma Public Employees Retirement System benefit structurewhich retroactively modifies the pension rights of OklahomaPublic Employees Retirement System members who have acquired"service vested" rights upon the completion of eight years ofservice.
 6. The point in time or occurrence of event(s) in which theLegislature would be constitutionally prohibited from amendingthe Oklahoma Public Employees Retirement System benefit structureis a question of fact which must be determined on a case-by-casebasis.
 7. The language "the then existing rights" in 74 O.S.Supp.1995, § 923(A) encompasses the right to present pensioncalculation formulas, including minimum final averagecompensation amounts.
 a. Any modifications made by the Legislature regardingbenefits contained within a statutory retirement formulaaffecting members of the Oklahoma Public Employees RetirementSystem with less than eight years of service, is permissible solong as the modification does not deprive the members of their"contractually based" rights to a substantial or reasonablepension.
 b. Legislative modifications which retroactively amend thepension calculation formulas of members of the Oklahoma PublicEmployees Retirement System who have acquired a "service vested"benefit upon the completion of eight years of service isexpressly prohibited by 74 O.S.Supp. 1995, § 923(A).
 8. Deletion of the language "the then existing rights ofmembers and beneficiaries" from 74 O.S.Supp. 1995, § 923(A)by the Legislature would be constitutionally permissible so longas the modification operated prospectively and affected onlyfuture service of members of the Oklahoma Public EmployeesRetirement System.
 9. To the extent that Attorney General Opinions 82-11 and86-54 are inconsistent with this Opinion, each is herebywithdrawn.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
BARRY K. KOONCE ASSISTANT ATTORNEY GENERAL
[1] A review of relevant authorities reveals that subsection A of Section 923 has never been judicially construed. However, a former Attorney General previously examined the language "then existing rights" in Section 923(A) and opined:
 [W]e believe it clear that the "then existing rights" protected by § 923 encompass those rights which, under the extant provisions of the Public Employees Retirement System statutes, have become "vested" rights. See 74 O.S.Supp. 1980, § 917[74-917]; 74 O.S.Supp. 1979, § 912.1[74-912.1]. Such vested rights may not be adversely impacted by legislative amendment or repeal of the Retirement System statutes.
A.G. Opin. 82-11 at p. 30 (emphasis added).
It is important to note that this prior examination preceded the issuance of relevant Oklahoma decisional law regarding the nature of public pension rights in Oklahoma, and thus, is no longer necessarily dispositive of the issues contained within the current inquiries.
[2] No bill of attainder, ex post facto law, nor any lawimpairing the obligation of contracts, shall ever be passed.
Okla. Const. art. II, § 15 (emphasis added).
[3] The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repealaffect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute.
Okla. Const. art. V, § 54 (emphasis added).
[4] Court citing e.g., Betts v. Board of Administration,21 Cal.3d 859, 148 Cal.Rptr. 158, 582 P.2d 614 (1978).
[5] Court citing e.g., Singer v. Topeka, 607 P.2d 467 (Kan. 1980). In Singer, the Kansas Supreme Court held that "the employee has vested contract rights prior to actual retirement."Id. at 474.
[6] Today, the twenty year service credit requirement for a "normal retirement date" remains in place for both systems. See,11 O.S.Supp. 1995, § 49-100.1[11-49-100.1](7) and 11 O.S.Supp. 1995, §50-101[11-50-101](8).
[7] Woods, 845 P.2d at 882 n. 5.
[8] Other jurisdictions refer to this right as a "limitedvesting" which "occurs following the rendition of service and prior to completion of the prescribed time [to retire]." PolicePension and Relief Board of Denver v. McPhail, 338 P.2d 694, 699
(Colo. 1959) (emphasis added).
[9] "[T]he right to a pension . . . become[s] absolute, upon the pension recipient's becoming eligible for payment of the pension." Woods, 845 P.2d at 882 (quoting from Baker,718 P.2d at 350-51).
[10] In order to have a pension calculated, consideration must be given to the retirement formula in effect at the time of retirement. See Alldredge v. Oklahoma Firefighters Pension andRetirement Board, 816 P.2d 580, 583 (Okl.Ct.App. 1991); seealso Berry v. Oklahoma Public Employees Retirement System,768 P.2d 898, 901 (Okla. 1989) ("OPERS [is required to compute] benefits based upon the maximum allowable average compensation in effect at the time of . . . retirement"). It is distinctly possible that the Legislature may increase the pension retirement formula between the time of election and the time of retirement.
[11] Title 74 O.S. 1991, § 912.1[74-912.1](1) provides:
 In the event the Plan of the Public Employees Retirement System is terminated or partially terminated the right of all participants or in the event of partial termination the rights of the affected participants, or in the event of complete discontinuance of contributions, whether retired or otherwise, shall become fully vested.
[12] The Taylor Court, in citing United States Trust Co. v.New Jersey, 431 U.S. 1 (1977), stated the "U.S. Supreme Court requires the satisfaction of three factors before the contract clause can be said to have been violated":
 The reviewing court must find that (1) the contractual obligation at issue arose under statute, (2) the state's actions impaired an obligation of that contract, and (3) the impairment was not "reasonable and necessary to serve an important public purpose."
Taylor, 897 P.2d at 279.
[13] It should also be noted that in adopting the "majority rule" for Oklahoma in Taylor, the Oklahoma Supreme Court cites with approval a portion of the California Supreme Court's analysis in Betts. This appears to be a significant departure from its analysis in Baker, wherein the Court expressly rejected Betts and its view that the contract regarding retirement comes into existence and provides protectible interests at the time of employment. However, we believe that theTaylor Court limited its reliance on Betts to merely recognize the "contractual nature" of the relationship between the State and its employees, and not to overturn Baker.
[14] Although not specifically germane to this discussion, it must also be pointed out that with respect to public pensions in Oklahoma, the Oklahoma Constitution contains pertinent articles which effectively restrain certain acts by the Legislature. Seee.g., Article V, § 62 (regarding payments from Oklahoma Teachers' Retirement System) and Article XXIII, § 12 (regarding the management, administration and disposition of all proceeds, assets and income of any public retirement system administered by State agencies).
[15] See footnote 7.
[16] "The rights of a government employee are defined by the limits of the contract." Woods, 845 P.2d at 883.
[17] Because the Legislature may continue to provide for increases to current OPERS members' statutory retirement formulas, we believe that this view does not offend previous Oklahoma rulings regarding the timing and crediting of pension formula calculation. See footnote 10 citing Berry andAlldredge.