Dear Senator Rabon,
¶ 0 This office has received your letter requesting an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Does 27A O.S. Supp. 2005, § 2-11-401.7[27A-2-11-401.7](A)[1]
 make it unlawful for a person to dispose of waste tires at ortransport waste tires to a site or facility outside the State ofOklahoma? If so, do these restrictions constitute a burden oninterstate commerce in violation of the Commerce Clause of theUnited States Constitution?
 2. Does 27A O.S. Supp. 2005, § 2-11-401.4[27A-2-11-401.4](A), which limitscompensation to tire recycling facilities located in Oklahoma andwaste tires from Oklahoma, constitute an unconstitutional burdenon interstate commerce?
 Purpose Of The Oklahoma Waste Tire Recycling Act
¶ 1 The Oklahoma Waste Tire Recycling Act ("Act") as set forth in 27A O.S. Supp. 2005, §§ 2-11-401-2-11-401.7, was originally enacted by the Oklahoma Legislature in 1989 with the principal purpose of protecting the environment by encouraging the reduction of waste tires through compensation for using certain recycling methods. See 1989 Okla. Sess. laws ch. 176.[2]
¶ 2 The provisions of the Act which are central to question number one provide in pertinent part as follows:
 A. Except as otherwise provided by this section, it shall be unlawful for any person to:
. . . .
 2. Dispose of waste tires at any site or facility other than a site or facility for which a permit has been issued, or which has been otherwise authorized by the Department;
 3. Knowingly transport or knowingly allow waste tires under the control or in the possession of the person to be transported to an unpermitted or unapproved
site or facility[.]
27A O.S. Supp. 2005, § 2-11-401.7[27A-2-11-401.7] (emphasis added) (emphasized language was added to the Act in 2005). The term "Department" as used in the Act means the "Department of Environmental Quality." Id. § 2-11-401.1(4).
 Statutory Construction
¶ 3 When construing the meaning of a statute, the main goal is to ascertain and give effect to the intent of the Legislature.Cooper v. State ex rel. Dep't of Pub. Safety, 917 P.2d 466,468 (Okla. 1996). To determine the intent of the Legislature, all provisions of the Act should be considered rather than isolating one provision on its own. McNeill v. City of Tulsa,953 P.2d 329, 332 (Okla. 1998). Throughout the Act references are made to the State of Oklahoma. For example, the additions made in subsection (A) of Section 2-11-401.4, which is discussed below with respect to your second question, limit compensation payable under the Act to facilities located in Oklahoma and further pay compensation only for waste tires from Oklahoma. Subsection (A) of Section 2-11-401.4 provides:
 Compensation to waste tire facilities and tire-derived fuel or TDF facilities pursuant to this section shall be limited to facilities located in Oklahoma. Compensation for waste tire activities pursuant to this section shall be limited to waste tires from Oklahoma. To be eligible, applicants for compensation shall be in compliance with the Oklahoma Waste Tire Recycling Act.
Id.
¶ 4 When considering all provisions of the Act, most importantly those involving compensation for the recycling incentive, it is apparent the Legislature meant for the Act to apply only to facilities located in Oklahoma. Therefore, subsections 2 and 3 of Section 2-11-401.7(A), set forth above, restrict persons in Oklahoma from disposing of or transporting waste tires to sites or facilities located in the State of Oklahoma that have not been permitted or authorized by the Department. Those subsections of the Act do not prohibit persons in Oklahoma from disposing of or transporting waste tires to sites or facilities located outside the State of Oklahoma.
¶ 5 Legislation is strongly presumed to be constitutional.Taylor v. State Educ. Employees Group Ins. Program,897 P.2d 275, 277 (Okla. 1995). Furthermore, whenever possible statutes should be construed so as to uphold their constitutionality.Kimery v. Pub. Serv. Co., 622 P.2d 1066, 1069 (Okla. 1980).
¶ 6 To construe the Act otherwise and prohibit the disposition or transportation of waste tires to sites or facilities outside the State of Oklahoma would adversely affect interstate commerce by restricting the flow of interstate goods and extend the Act beyond the jurisdictional boundary of Oklahoma, which is not permitted. See Healy v. Beer Inst., 491 U.S. 324, 332 (1989).Healy reiterated that the application of a state statute to commerce wholly outside its borders, "whether or not the commerce has effects within the State," is precluded by the Commerce Clause. Id. at 336 (quoting Edgar v. MITE Corp.,457 U.S. 624, 642-43 (1982)). The Court further stated that a state exceeds its authority if one of its statutes "directly controls commerce occurring wholly outside the boundaries of a State" regardless of whether that was the state's intent. Id.
¶ 7 If the Act pertained to out-of-state facilities, those facilities would have to seek a permit from the Department before accepting waste tires from Oklahoma. Such a requirement would be prohibited by the Commerce Clause as addressed in the Healy
case where the Court stated, "[S]pecifically, the Commerce Clause dictates that no State may force an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another." Id.
¶ 8 Furthermore, allowing a person to take waste tires out of Oklahoma would further the purpose of the Act by protecting the State's environment. Once taken out of Oklahoma, the question of whether the tires are disposed of lawfully would be one answerable under the laws of the receiving state. As previously mentioned in Attorney General Opinion 97-52, the Act is a "comprehensive state-wide program" being administered jointly by the Oklahoma Department of Environmental Quality and the Oklahoma Tax Commission and not a program applicable out of state. Id.
at 96. Also, by adding the words "or which has been otherwiseauthorized by the Department," and the words "or unapproved," respectively to subsections 2 and 3 of Section 2-11-401.7(A), the Legislature recognized other facilities might exist where a person in Oklahoma could take waste tires even though such facilities have not been issued a permit, but are otherwise authorized by the Department. (Emphasis added). What other facilities are authorized or have not been approved by the Department are questions of fact outside the scope of an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
¶ 9 Because the answer to part one of your first question, regarding whether it is unlawful for a person in Oklahoma to dispose of or transport waste tires outside the State of Oklahoma, is no, we need not address whether the provisions of Section 2-11-401.7 constitute a burden on interstate commerce in violation of the Commerce Clause of the United States Constitution.
 Limitation Of Compensation
¶ 10 Your second question asks whether Section 2-11-401.1(A), which limits compensation to facilities in and waste tires from Oklahoma, creates an unconstitutional burden on interstate commerce.
¶ 11 Although the United States Supreme Court has held some regulatory efforts at the state or local level through laws facilitating economic protectionism were adverse to interstate commerce and discriminatory against out-of-state competitors,[3] in contrast, the Act, rather than adversely affecting interstate commerce, has in essence created a market for waste tires in the State of Oklahoma, which would not otherwise exist if compensation from the Waste Tire Indemnity Fund was not available.
¶ 12 The case with facts analogous to the operation of the Act and most germane to the issue posed in your second question of whether limiting compensation to Oklahoma facilities and waste tires from Oklahoma creates an unconstitutional burden on interstate commerce is Hughes v. Alexandria Scrap Corporation,426 U.S. 794 (1976).
¶ 13 In Hughes, a statutory scheme for ridding the state of old automobile hulks through scrap recycling was passed by the State of Maryland to protect the aesthetic nature of the environment. Id. at 796. Similarly, the Oklahoma Legislature created a method under the Act to rid the State of waste tires with the purpose of protecting the environment. See 27A O.S. Supp. 2005, §§ 2-11-401-2-11-401.7. "A reading of the Act makes it clear that the Act's principle purpose is the protection of the environment by facilitating the reduction of waste tires through proper recycling." AG Opin. 95-58, at 154. The Maryland statute required less extensive documentation from in-state suppliers than from out-of-state suppliers in order to claim a "bounty" from the state for destruction of the hulks, which Virginia scrap processors challenged as an impermissible burden on interstate commerce in violation of the Commerce Clause.Hughes, 426 U.S. at 794-95 (syllabus). A three-judge panel of the District Court agreed with the Virginia scrap processors but the Supreme Court reversed the judgment. Id.
¶ 14 The history of the Commerce Clause established a well-settled premise that barriers to the free flow of commerce, responding to the economic laws of supply and demand in the Nation's common market, cannot be created by state lines. SeeGreat Atl. Pac. Tea Co. v. Cottrell, 424 U.S. 366, 379-80
(1976). "The Clause was designed in part to prevent trade barriers that had undermined efforts of the fledgling States to form a cohesive whole following their victory in the Revolution."Hughes, 426 U.S. at 807.
¶ 15 There are exceptions to the restraints of the Commerce Clause. The one most applicable to the statutory scheme of Maryland, discussed in Hughes, and the one created by the Act is the Market Participant Doctrine. "That doctrine differentiates between a State's acting in its distinctive governmental capacity, and a State's acting in the more general capacity of a market participant; only the former is subject to the limitations of the negative Commerce Clause." New Energy Co. v. Limbach,486 U.S. 269, 277 (1988).
¶ 16 Hughes found that "[n]othing in the purposes animating the Commerce Clause prohibits a State, in the absence of congressional action, from participating in the market and exercising the right to favor its own citizens over others."Hughes, 426 U.S. at 810 (footnotes omitted). The Court found this is true even if the effect is to channel benefits to domestic processors, so long as no trade barrier forbids movement out of state. Id. at 809-10. Under the Maryland statute taking hulks out of state was discouraged because the bounty was made practically unavailable to out-of-state processors due to the level of documentation required of them. Id. at 794 (syllabus). The same may be said of the Act because of the lack of compensation available to out-of-state waste tire recycling facilities. This may discourage the movement of waste tires out of Oklahoma. However, according to Hughes this is an acceptable practice, since there is no actual prohibition on the movement of waste tires out of Oklahoma. Id. at 806.
¶ 17 In Hughes or under the Act, there is no prohibition or burdensome regulation or tax. In both instances the states are merely entering the market to bid up the price of waste products to encourage their proper disposal. Making in-state recycling or disposal more lucrative and thus encouraged does not burden interstate commerce even though it may be affected. Hughes held that a state may enter a market and favor its own citizens and that is what happened with the Act.
¶ 18 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Oklahoma Waste Tire Recycling Act, specifically 27A O.S. Supp. 2005, § 2-11-401.7[27A-2-11-401.7](A), does not prohibit a person from disposing of waste tires at or transporting waste tires to a site or facility outside the State of Oklahoma, but such disposal will be subject to the laws of the receiving state.
 2. Restricting compensation under 27 A O.S. Supp. 2005, § 2-11-401.4(A) of the Oklahoma Waste Tire Recycling Act to facilities located in the State of Oklahoma and to waste tires from Oklahoma does not constitute an unconstitutional burden on interstate commerce.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 JAMES V. BARWICK Assistant Attorney General
[1] The Act has been amended many times over the years. Most recently the First Regular Session of the 50th Legislature amended, repealed and recodified numerous provisions of the Act, effective July 1, 2005. See 2005 Okla. Sess. Laws ch. 230. The language in Section 2-11-413 was amended and then recodified as Section 2-11-401.7 of Title 27A. See id. §§ 5, 14. Also, Section 2-11-405 was amended and then recodified to Section 2-11-401.4 and Section 2-11-406 was repealed. See id. §§ 3, 7, 11.
[2] See A.G. Opins. 95-58 and 97-52 for a brief history of the Act and its purposes.
[3] See West Lynn Creamery, Inc. v. Healy, 512 U.S. 186
(1994); New Energy Co. v. Limbach, 486 U.S. 269, 277 (1988);Camps Newfound/Owantonna, Inc. v. Town of Harrison,520 U.S. 564, 592 (1997)). (These cases dealt with burdensome prohibitions, discriminatory taxes or regulations that caused a burden on interstate commerce and the operation of a free market.)